[No. B040820. Second Dist., Div. Seven. Aug. 15, 1990.]

THE PEOPLE, Plaintiff and Respondent, v.
DAVID REED MITCHELL, Defendant and Appellant.

**COUNSEL**

Linda P. Horner, under appointment by the Court of Appeal, for Defendant and Appellant.

John K. Van de Kamp, Attorney General, Richard B. Iglehart, Chief Assistant Attorney General, William T. Harter, Patrick T. Brooks and David F. Glassman, Deputy Attorneys General, for Plaintiff and Respondent.

**OPINION**

**JOHNSON, J.**—Defendant David Reed Mitchell appeals from the judgment following his plea of no contest for possession for sale and sale of cocaine. (Health & Saf. Code, § 11351.) On appeal, Mitchell contends the trial court erred in denying his motion to suppress certain evidence pursuant to Penal Code section 1538.5. We conclude the trial court properly denied the motion and affirm the judgment.

## STATEMENT OF FACTS AND PROCEEDINGS BELOW

Mitchell was charged in an information with one count of possession of cocaine for sale. Mitchell moved to suppress the evidence obtained pursuant to Penal Code section 1538.5. Specifically, the motion contended (1) Mitchell's prearrest statements must be suppressed because he was not advised of his *Miranda* (*Miranda* v. *Arizona* (1966) 384 U.S. 436 [16 L.Ed.2d 694, 86 S.Ct. 1602, 10 A.L.R.3d 974]) rights; (2) the evidence seized during the officers' first entry into the house must be suppressed because the search was without a warrant; and (3) the evidence seized pursuant to the search warrant must be suppressed because the probable cause for the search was the result of illegally seized evidence.

At the hearing on the motion to suppress, the parties stipulated to the admission of the preliminary hearing transcript; the house was Mitchell's residence; the contraband was narcotics; the weapons belonged to Mitchell or were in his custody; and Mitchell had been drinking.

The court conducted an evidentiary hearing on the motion. The evidence shows the arresting officer, Officer Moroso, received a radio transmission indicating a man had threatened his neighbor, Mr. Ruiz, with a gun. The radio transmission described the assailant as a Caucasian male with a beard, wearing a green shirt and a cast.

Officer Moroso drove to the address provided and found Mitchell standing outside his front porch. Mitchell matched the description provided to Officer Moroso. The door to the house was open but a screen door was closed.

When Officer Moroso arrived, he was joined by two other police officers. The other officers told Officer Moroso they spoke with Mr. Ruiz who stated Mitchell appeared intoxicated and threatened Mr. Ruiz with a shotgun.

The officers approached Mitchell and Officer Moroso told him they were investigating a complaint that Mitchell had brandished a shotgun and threatened his neighbor. Mitchell appeared intoxicated and began rambling about property lines and a wall.

Mitchell then told the officers he pointed a shotgun at Mr. Ruiz but the weapon was not loaded. Officer Moroso stopped questioning Mitchell and stated he would like to secure Mitchell's shotgun before proceeding further. Officer Moroso had not yet determined whether to arrest Mitchell but was concerned with his own safety and that of the other officers and the general public. Officer Moroso heard voices from within the house and believed

there could be additional suspects or weapons within the home. Further, there was a playground and children's nursery located directly across the street.

Mitchell agreed to produce the shotgun and proceeded into the house. The evidence is in conflict concerning whether the officers applied any physical pressure to Mitchell to propel him into the house, and the trial court made no finding on this issue since it was undisputed the officers did not have consent to enter the house.

Unwilling to permit an intoxicated suspect to obtain a weapon unsupervised, the officers followed Mitchell into the house. Once inside the house, the officers saw three people on a couch. Mitchell made eye contact and facial expressions to one of the men, Mr. Goldenberg, who then got up and proceeded to the kitchen. Officer Moroso feared the man might be seeking a weapon and followed him. Mitchell unsuccessfully tried to physically restrain Officer Moroso.

In the kitchen, Officer Moroso found two shotguns, a substance appearing to be cocaine and various paraphernalia. The officers arrested Mitchell and the three other people. Officer Moroso then conducted a protective sweep of the house looking for additional people and weapons. The sweep resulted in the discovery of a machete and a pellet gun and currency. The officers then secured the house and obtained a search warrant. Pursuant to the warrant, the police recovered cash and an additional 1.34 pounds of cocaine.

The trial court concluded there were exigent circumstances which justified the officers' initial entry into the house and their subsequent protective search. The court found the officers were legitimately concerned with their safety and the safety of others given Mitchell's intoxication, his prior threats with a shotgun, and the presence of additional people within the house. The trial court also found the officers acted reasonably in following Mr. Goldenberg into the kitchen to assure their continued safety. Finally, the trial court found the officers were not using the complaint against Mitchell as a subterfuge for investigating him for drug violations.

Mitchell pled no contest and the trial court sentenced him to the middle term of three years. Execution of sentence was stayed pending this appeal.

## Discussion

### I. Mitchell Waived Any Alleged Error Concerning the Suppression of His Statements to the Police.

■ Mitchell argues the trial court erroneously failed to suppress his statements to the police because they were obtained in violation of *Miranda* v. *Arizona, supra,* 384 U.S. 436. ■ However, as respondent correctly notes, while Mitchell raised this contention in his written motion, he failed to pursue this theory at the Penal Code section 1538.5 hearing. Indeed, the parties and the trial court repeatedly stated the issues before the trial court concerned the police officers' warrantless entry into the house and the subsequent search pursuant to a warrant. Since Mitchell failed to press the trial court on his claim of *Miranda* violations, the issue may be deemed waived on appeal. (*People* v. *Alaniz* (1986) 182 Cal.App.3d 903, 907 [227 Cal.Rptr. 575]; see *People* v. *Obie* (1974) 41 Cal.App.3d 744, 750 [116 Cal.Rptr. 283], disapproved on other grounds in *People* v. *Rollo* (1977) 20 Cal.3d 109, 120, fn. 4 [141 Cal.Rptr. 177, 569 P.2d 771]; *Smith* v. *County of Los Angeles* (1989) 214 Cal.App.3d 266, 285 [262 Cal.Rptr. 754].)

■ Regardless, there was no violation of Mitchell's *Miranda* rights. Law enforcement officers are only required to apprise a person of his or her *Miranda* rights when there is a custodial interrogation. (*Mathis* v. *United States* (1968) 391 U.S. 1, 5 [20 L.Ed.2d 381, 385, 88 S.Ct. 1503]; *People* v. *Arnold* (1967) 66 Cal.2d 438, 447 [58 Cal.Rptr. 115, 426 P.2d 515], overruled on other grounds in *Walker* v. *Superior Court* (1988) 47 Cal.3d 112, 123 [253 Cal.Rptr. 1, 763 P.2d 852].) A custodial interrogation occurs when the person is questioned after being taken into custody or where the person is otherwise deprived of his freedom of action in a significant way. (*People* v. *Arnold, supra,* 66 Cal.2d at p. 448.)

Mitchell contends Officer Moroso's questions constituted a custodial interrogation. This is incorrect. When Officer Moroso first questioned Mitchell, Mitchell was not in custody nor was he prevented from simply returning to his house's interior without speaking to the officers.

In a similar case, two police officers, acting on an informant's tip, went to the defendant's home to investigate whether he illegally possessed a firearm in his home. (*People* v. *Merchant* (1968) 260 Cal.App.2d 875, 877 [67 Cal.Rptr. 459].) The officers asked the defendant through his screen door whether he was an ex-convict and whether he had a gun in his possession. (*Ibid.*) The defendant answered "yes" to each question and was then placed under arrest.

On appeal, the defendant contended the police were required to apprise him of his *Miranda* rights prior to questioning him. The Court of Appeal disagreed, holding no custodial interrogation occurred. "Appellant was certainly not in custody at the time he was first questioned. The appearance of two plainclothes officers outside the front screen door of his residence in no sense amounted to an arrest or detention. Nor had [appellant] been deprived of his freedom of action in any significant way. He could have closed the front door and returned to his room, and the police would have been unable legally to follow him, because they lacked reasonable cause to arrest him until he had answered their questions." (260 Cal.App.2d at p. 878.)

The same is true here. At the time of the questioning, Officer Moroso was unsure what had occurred and lacked probable cause to detain or arrest Mitchell. Further, there is substantial evidence Mitchell volunteered the information concerning his brandishing the shotgun without any interrogation. Volunteered statements are outside the scope of the *Miranda* rules. (See *People* v. *Jacobson* (1965) 63 Cal.2d 319, 328 [46 Cal.Rptr. 515, 405 P.2d 555].)

In sum, even assuming Mitchell did not waive this issue, there was no violation of his *Miranda* rights. Thus, his statements to the officers were properly admissible.

## II. THE TRIAL COURT PROPERLY CONCLUDED THERE WERE EXIGENT CIRCUMSTANCES WHICH WARRANTED THE OFFICERS' ENTRY INTO MITCHELL'S RESIDENCE.

 Mitchell argues the trial court erred in refusing to suppress the evidence seized by the officers during their initial entry into his residence because there were no exigent circumstances justifying the warrantless search. We disagree.

 Under the federal Constitution's Fourth Amendment, searches and seizures inside a residence without a warrant are presumptively unreasonable absent consent or exigent circumstances. (*Payton* v. *New York* (1980) 445 U.S. 573, 586 and fn. 25 [63 L.Ed.2d 639, 650-651, 100 S.Ct. 1371]; *People* v. *Ramey* (1976) 16 Cal.3d 263, 276 [127 Cal.Rptr. 629, 545 P.2d 1333].)

Although there is no litmus test for determining whether the facts in any given case qualify as exigent circumstances, courts should consider, inter alia, the gravity of the underlying offense and whether delay would pose a threat to police or public safety. (See *People* v. *Ramey, supra,* 16 Cal.3d at p. 276; *Welsh* v. *Wisconsin* (1984) 466 U.S. 740, 753 [80 L.Ed.2d 732, 745,

104 S.Ct. 2091].) Whether exigent circumstances exist is determined based upon the facts as they were known to the police officers at that time. (*People v. Valencia* (1987) 191 Cal.App.3d 1483, 1489 [237 Cal.Rptr. 128].)

Our facts are analogous to those in *People* v. *Haugland* (1981) 115 Cal.App.3d 248 [171 Cal.Rptr. 237]. There, a taxi driver told police officers a male passenger had just confided he was in Los Angeles to kill a man. The passenger showed the weapon to the taxi driver. The officers located a man fitting the passenger's description. The man was carrying a briefcase which the officers removed for their protection. (*Id.* at p. 255.) The man acknowledged the briefcase contained a gun but he explained he was planning to sell it. The officers then opened the briefcase which contained, in addition to the gun, narcotics.

The trial court granted the man's Penal Code section 1538.5 motion to suppress the evidence seized from the briefcase and dismissed the information. The Court of Appeal reversed.

First, the court noted no search occurred within the meaning of the Fourth Amendment. "Here, when the officers opened [the defendant's] briefcase, they were not 'searching' for anything; they *knew* it contained a loaded gun and went about *retrieving* the weapon. There was no seeking out of a hidden object, and [the defendant] gave up any reasonable expectation of privacy when he told the officers the briefcase contained a loaded gun. [¶] It would seem an unreasonable requirement under the circumstances here, and a waste of precious police and judicial time and effort, to require the officers to locate a magistrate and obtain a search warrant prior to removing the known dangerous object." (115 Cal.App.3d at p. 257, italics in original.)

The court went on to hold the search was proper under the exigent circumstances exception to the warrant requirement. "The 'exigent circumstance' in this case is the presence of a loaded automatic pistol in the briefcase, which for the protection of [the defendant], the officers, and any other persons within the immediate vicinity should have been removed and rendered safe before transportation." (115 Cal.App.3d at p. 258.)

Both of these rationales apply here with equal force. First, the officers knew the shotgun was in the house and Mitchell had agreed to retrieve it. The officers were not seeking out a hidden object. Further, Mitchell gave up any reasonable expectation of privacy, at least as to the presence of the shotgun within his home, when he acknowledged it was located there and admitted he had brandished the weapon at his neighbor.

More compelling is the argument concerning exigent circumstances. The officers clearly had the right to fear for their safety and those of the general

public given Mitchell's intoxicated state, his prior threat of murder, and the proximity of a potentially deadly weapon. It should be remembered the officers only knew the shotgun was in the house. It could have easily been kept just inside the entryway, giving Mitchell almost immediate access to the weapon by merely opening the screen door. Under these circumstances, the officers properly requested Mitchell to retrieve the shotgun and accompanied him when he went to do so. To hold otherwise would mean subjecting the officers to an immediate risk of danger for which there would be no other protection save abandoning their investigation and fleeing the premises. Their flight in turn would have subjected Mr. Ruiz to potential danger from this same shotgun.

In *People* v. *Cove* (1964) 228 Cal.App.2d 466 [39 Cal.Rptr. 535], officers responded to a radio call dispatching them to investigate a man brandishing a gun. The complaining witness told the officers the defendant threatened her with a gun. One of the officers peered through the defendant's apartment window while the other knocked on the door and informed the defendant of the complaint. The officer at the window observed the defendant, who was intoxicated, give his gun to another person who secured it under the couch. The first officer entered the apartment and was later followed by the officer who observed the companion hide the gun. He immediately seized the weapon from the couch.

The defendant argued the gun was illegally seized since the officers lacked probable cause to arrest him. The Court of Appeal disagreed holding there were exigent circumstances which justified the seizure. "[The officer] did not have to blind himself to the revelations of plain sight. Danger was in the air. The circumstances compelling and urgently called on [the officer] to get possession of the gun before it was used on his fellow officer or himself. He went after the gun, not to collect evidence but in self-protection. There was a seizure here but no search at all, since [the officer] knew exactly where the gun was. The Fourth Amendment, . . . prohibits only 'unreasonable' searches and seizures . . . . There was nothing unreasonable in this self-protective seizure of a dangerous weapon in close proximity to a man who was either dangerous or gave every appearance of menace." (228 Cal.App.2d at p. 471.)

Mitchell argues there were no articulable facts to support an objective belief that he posed a serious danger. This argument ignores Mitchell was intoxicated and had already threatened to kill one person. It also ignores Mitchell began rambling again about his dispute concerning the neighbor's wall and acknowledged he had a shotgun. Since the officers had no knowledge of the shotgun's exact location, they could not be assured Mitchell posed no threat. The Fourth Amendment does not require the officers to

blind themselves to the danger posed and, under the circumstances, they acted reasonably in entering the house to secure the shotgun.

■ Since we conclude the officers properly entered Mitchell's home without a warrant and later seized contraband in plain view, Mitchell's final argument that the subsequent search warrant should have been suppressed because it was based upon unlawfully obtained information must fail.

### DISPOSITION

The judgment is affirmed.

Lillie, P. J., and Woods (Fred), J., concurred.