Laura Jean GALL, Plaintiff,

v.

The CITY OF VIDOR, TEXAS,
et al., Defendant.

No. 1:94–CV 0005.

United States District Court,
E.D. Texas,
Beaumont Division.

Oct. 2, 1995.

Louis Dugas, Jr., Orange, TX, for plaintiff.

Laura Jean Gall, Vidor, TX, pro se.

Kent Morrison Adams, Amy Stout Bean, Adams Coffey & Duesler LLP, Beaumont, TX, for defendants.

## MEMORANDUM OPINION

COBB, District Judge.

### BACKGROUND

On June 20, 1993 the Plaintiff, Laura Gall, lost her home to fire. The Plaintiff moved into another residence shortly thereafter. Although Ms. Gall relocated many of her belongings shortly after the fire, she continued to keep her two dogs at her former residence. The Defendant, Mr. Kenneth Luce, was employed by the City of Vidor as an animal control officer. On October 4, 1993, acting on a complaint from the Plaintiff's next door neighbor, Mr. Luce went to the Plaintiff's burned out former residence. The Plaintiff kept the dogs in the back yard of the abandoned house and they were restrained by a chain link fence. Mr. Luce, from the neighbor's property examined the two dogs and determined that the dogs were abandoned and in poor health. Mr. Luce entered onto the property, by going through the house, and impounded the animals. The dogs were taken to the Vidor City pound and returned to Ms. Gall the following day.

In her original complaint the Plaintiff alleged wrongdoing on the part of several parties for events separate from and related to the events previously described. However, at the close of the Defendant's case only Mr. Luce remained as a defendant and only his actions concerning the impoundment of the animals remained in question. The Plaintiff contends that Mr. Luce's warrantless entry onto the property violates the Fourteenth Amendment. Included therein is the claim that one of the dogs was injured by Mr. Luce, ultimately resulting in the dog's death. Further, the Plaintiff asserts a violation of the Fourth Amendment due to Mr. Luce's warrantless entry of the abandoned house. At the conclusion of his case, the Defendant moved for a judgment as a matter of law and this court granted the motion.

### ANALYSIS

■ Current Supreme Court jurisprudence requires that an action filed under 42 U.S.C.A. § 1983 be examined at two distinct levels. First, a court must determine whether the plaintiff states a cognizable constitutional cause of action. *Cathey v. Guenther,* 47 F.3d 162, 163 (5th Cir.1995) (citing *Siegert v. Gilley,* 500 U.S. 226, 232, 111 S.Ct. 1789, 1793, 114 L.Ed.2d 277 (1991)). This initial line of analysis follows the *Parratt/Hudson/Daniels* doctrine. The second level of analysis concerns qualified immunity. Only after the initial inquiry is satisfied is the issue of qualified immunity considered.

### The Parratt/Hudson/Daniels Doctrine

■ Under the *Parratt/Hudson/Daniels* doctrine, a state actor's random and unauthorized deprivation of a plaintiff's property does not result in a violation of procedural due process rights if the state provides an adequate post-deprivation remedy. In *Parratt,* the Supreme Court held that a negligent deprivation of property did not violate the plaintiff's due process rights. *Parratt v. Taylor,* 451 U.S. 527, 535–45, 101 S.Ct. 1908, 1913–17, 68 L.Ed.2d 420 (1981). In *Hudson,* the Supreme Court extended the analysis to intentional deprivations:

If negligent deprivations of property do not violate the Due Process Clause because predeprivation process is impracticable, it follows that intentional deprivations do not violate that Clause provided, of course, that adequate state post-deprivation remedies are available.

*Hudson v. Palmer,* 468 U.S. 517, 533, 104 S.Ct. 3194, 3203–04, 82 L.Ed.2d 393 (1984).

The Supreme Court narrowed the range of cases in which due process violations would be found in *Daniels v. Williams,* 474 U.S. 327, 106 S.Ct. 662, 88 L.Ed.2d 662 (1986). In *Daniels,* the Court overruled *Parratt* by holding that merely negligent deprivations do not violate due process. Chief Justice Rehnquist, writing for the Court, analyzed the issue:

> We think that the actions of prison custodians in leaving a pillow on the prison stairs, or mislaying an inmate's property, are quite remote from the concerns just discussed. Far from an abuse of power, lack of due care suggests no more than a failure to measure up to the conduct of a reasonable person. To hold that injury caused by such conduct is a deprivation within the meaning of the Fourteenth Amendment would trivialize the centuries-old principle of due process of law.[1]

*Daniels v. Williams,* 474 U.S. 327, 332, 106 S.Ct. 662, 88 L.Ed.2d 662 (1986)

■ The Supreme Court has observed that, in the context of the *Parratt/Hudson/Daniels* doctrine, state officials could not characterize their conduct as random and unauthorized if the state had "delegated to them the power and authority to effect the very deprivation complained of." *Alexander v. Ieyoub,* 62 F.3d 709, 712 (5th Cir.1995) (citing *Zinermon v. Burch,* 494 U.S. 113, 138, 110 S.Ct. 975, 990, 108 L.Ed.2d 100 (1990). The scope of a public official's authority is gauged by state law. *Cathey v. Guenther,* 47 F.3d 162, 163 (5th Cir.1995) (citing *Jett v. Dallas Independent School Dist.,* 491 U.S.

701, 737, 109 S.Ct. 2702, 2723–24, 105 L.Ed.2d 598 (1989)). The Plaintiff has produced no evidence which dictates the scope of the Defendant's responsibilities as an animal control officer. This court takes judicial notice of the Texas Health and Safety Code § 821.022. Texas Health & Safety Code Ann. § 821.022 (Vernon 1992). The code provides that an animal control officer "may" apply to a court for a warrant to seize an animal. *Id.* The same code section later uses the word "shall" indicating that the legislature was cognizant of the difference in the two words. *Id.* As the Texas Legislature has not directed that an animal control officer *must* secure a warrant prior to impounding mistreated animals, the obligation to do so remains discretionary. Clearly, Mr. Luce was acting within the proscribed limits of his responsibilities. As Mr. Luce was an animal control officer in the employ of the City of Vidor, this court concludes that the *Parratt/Hudson/Daniels* doctrine does not foreclose adjudication of Ms. Gall's Fourth Amendment claim under this § 1983 suit because the "random and unauthorized" element necessary for its application is absent.

■ However, the negligent deprivation of property claim does not survive. The Plaintiff asserts that she was deprived of property without due process of law in violation of the Fourteenth Amendment when the Defendant impounded the dogs. This claim covers both the impoundment and the asserted negligent injury to one of the dogs. The impoundment issue will be examined under qualified immunity. After *Daniels,* mere negligence on the part of a state official which deprives an individual of property is not actionable under the Due Process Clause of the Fourteenth Amendment. *Daniels v. Williams,* 474 U.S. at 328, 106 S.Ct. at 663. The Plaintiff asserts that Mr. Luce was negligent in his handling of the dogs during impoundment. Standing alone, Mr. Luce's actions do not state a claim under the Fourteenth Amendment. Mr. Luce's actions are

1. In footnote 3, Justice Rehnquist does contemplate the existence of something between negligence and intent:

> Despite his claim about what he might have pleaded, petitioner concedes that respondent was at most negligent. Accordingly, this case

affords us no occasion to consider whether something less than intentional conduct, such as recklessness or "gross negligence," is enough to trigger the protections of the Due Process Clause.

the very kind which make a predeprivation remedy impracticable and about which the *Daniels* court was concerned. Such a negligent act on the part of Mr. Luce would be a random and unauthorized action for which state tort law provides a suitable post-deprivation remedy.

### Qualified Immunity

■ The existence of qualified immunity for government officials serves to balance some of the most important and competing forces at work in our society. As Justice Scalia noted in *Anderson v. Creighton,* 483 U.S. 635, 638, 107 S.Ct. 3034, 3038, 97 L.Ed.2d 523 (1986):

> When government officials abuse their offices, "action[s] for damages may offer the only realistic avenue for vindication of constitutional guarantees." *Harlow v. Fitzgerald,* 457 U.S., at 814, 102 S.Ct., at 2736. On the other hand, permitting damages suits against government officials can entail substantial social costs, including the risk that fear of personal monetary liability and harassing litigation will unduly inhibit officials in the discharge of their duties. *Ibid.* Our cases have accommodated these conflicting concerns by generally providing government officials performing discretionary functions with a qualified immunity, shielding them from civil damages liability as long as their actions could reasonably have been thought consistent with the rights they are alleged to have violated.

Qualified immunity allows public officials performing discretionary functions to be generally shielded from liability for civil damages as long as their conduct does not violate "clearly established rights of which a reasonable person would have known." *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982).

■ As established in *Anderson,* the qualified immunity inquiry is a two step process. *Creighton v. Anderson,* 724 F.Supp. 654, 657 (D.Minn.1989). The first step examines whether or not the constitutional right which allegedly has been violated was "clearly established." The law is clearly established if the contours of a right are sufficiently clear so that a reasonable official would under-

stand that what he is doing violates that right. *Texas Faculty Ass'n v. University of Texas at Dallas,* 946 F.2d 379, 389 (5th Cir. 1991) (citing *Anderson v. Creighton,* 483 U.S. 635, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987)). The standard is formulated at this level of generality in order to afford the measure of protection that the doctrine is intended to confer. *See Anderson,* 483 U.S. at 639–40, 107 S.Ct. at 3039. Therefore, "the right the official is alleged to have violated must have been 'clearly established' in a more particularized, and hence, more relevant sense." *Id.* at 640, 107 S.Ct. at 3039.

■ The second step involves considering the "objective legal reasonableness" of the defendant's conduct in light of the information which the official possessed at the time of the alleged violation. *Anderson v. Creighton,* 483 U.S. at 641, 107 S.Ct. at 3040; *McIntosh v. Arkansas Republican Party,* 856 F.2d 1185 (8th Cir.1988). The inquiry is objective only; the defendant's subjective intent is irrelevant. *Anderson v. Creighton,* 483 U.S. at 641, 107 S.Ct. at 3040; *see Myers v. Morris,* 810 F.2d 1437, 1455 (8th Cir.), *cert. denied,* 484 U.S. 828, 108 S.Ct. 97, 98 L.Ed.2d 58 (1987). If reasonable public officials could differ on the lawfulness of the defendant's actions, the defendant is entitled to qualified immunity. *Johnston v. City of Houston,* 14 F.3d 1056, 1059 (5th Cir.1994); *Pfannstiel v. City of Marion,* 918 F.2d 1178, 1183 (5th Cir.1990). The law of qualified immunity, therefore, protects "all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs,* 475 U.S. 335, 341, 106 S.Ct. 1092, 1096, 89 L.Ed.2d 271 (1986).

"Whether the conduct of which the plaintiff complains violated clearly established law is an essentially legal question." *Johnston,* 14 F.3d at 1059 (citing *Mitchell v. Forsyth,* 472 U.S. 511, 526, 105 S.Ct. 2806, 2815, 86 L.Ed.2d 411 (1985). Therefore, this court must determine to what extent, if any, the law regarding search and seizure by an animal control officer is clearly established.

In some cases, the protection of the plaintiff's rights by a federal statute or the Constitution, at the time of the official acts, is

questionable or has yet to be determined. *See Procunier v. Navarette,* 434 U.S. 555, 98 S.Ct. 855, 55 L.Ed.2d 24 (1978) (finding prison officials were entitled to summary dismissals of claims that they violated a prisoner's rights under the First and Fourteenth Amendments by interfering with his mail because the prisoner's mail rights under those amendments "had not yet been declared"). Even if the interest asserted by the Plaintiff is clearly of a type generally protected by federal law, the Defendant is entitled to immunity as a matter of law if it was not clear at the time of the acts at issue that an exception did not permit those acts. *Mitchell v. Forsyth,* 472 U.S. at 531–35 & n. 12, 105 S.Ct. at 2818–20 & n. 12 (holding that defendant was entitled to qualified immunity from a suit for a warrantless wiretap because, although an individual's right to be free of such wiretaps was well-established, there was a legitimate unresolved question as to the existence of a national-security exception). "This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful, see *Mitchell,* supra, 472 U.S., at 535, n. 12, 105 S.Ct., at 2820, n. 12; but it is to say that in the light of pre-existing law the unlawfulness must be apparent. See, e.g., *Malley,* supra, 475 U.S., at 344–345, 106 S.Ct., at 1097–1098; *Mitchell,* supra, 472 U.S., at 528, 105 S.Ct., at 2816...." *Anderson,* 483 U.S. at 640, 107 S.Ct. at 3039.

■ In the present case, the Plaintiff's Fourth Amendment claim fails the first of the two *Anderson* tests. The Defendant's actions fall within an exception to the clearly established constitutional right to be free from an unwarranted search and seizure. While Mr. Luce's unwarranted entry into the abandoned and charred remains of Ms. Gall's former residence for the purpose of seizing the apparently mistreated dogs does not constitute a search in the classic sense, his taking of the two animals certainly constitutes a seizure. To this extent, it would be untenable for this court to assume that Fourth Amendment guarantees guarding against unlawful search and seizure are of questionable existence or application.

However, the Defendant is entitled to immunity as a matter of law if it was not clear at the time of the acts that an exception did not permit those acts. *Mitchell,* 472 U.S. at 531–35, 105 S.Ct. at 2818–20. There is but a single Texas case which even remotely addresses the Fourth Amendment concerns raised by Ms. Gall. In *McCall v. State,* the Court of Criminal Appeals of Texas held that it was no violation of the Fourth Amendment for a member of the Humane Society to enter onto another's property and seize abused and mistreated animals. 540 S.W.2d 717 (Tex.Crim.App.1976). The court specifically found that it would have been proper for even a police officer to enter the property and seize the dogs. The court reasoned as follows:

We find that in the present case a police officer could have done what Miss DeStefano did. It is well recognized that the Fourth Amendment protects people and not places. What a person knowingly exposes to the public is not subject to Fourth Amendment protection. *Long v. State,* 532 S.W.2d 591 (Tex.Cr.App.1976); *Katz v. United States,* 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967). A search means, of necessity, a quest for, a looking for, or a seeking out of that which offends against the law. This implies a prying into hidden places for that which is concealed. It is simply not a search to observe that which is open to view. *Turner v. State,* 499 S.W.2d 182 (Tex.Cr.App.1973); *Long,* supra.

Appellant kept the dogs in an open field clearly in view of neighbors and passersby. If it was apparent that the animals were not being properly cared for in possible violation of the law, it was not unreasonable to go onto the property and seize them....

*McCall v. State,* 540 S.W.2d at 718–19. This court finds that an animal control officer, after receiving reports of animal abuse and after having viewed the dogs from outside the premises, may enter the property of another under the exception delineated in *McCall.*

Furthermore, under well-established canons of statutory construction, the Texas Leg-

islature has recognized that an animal control officer is under no obligation to secure a warrant before impounding mistreated and abandoned animals. As discussed above, the Legislature was cognizant of the difference between the use of "may" and "shall" when it said that an animal control officer "may apply to a justice court ... for a warrant to seize the animal." Texas Health & Safety Code Ann. § 821.022(a) (Vernon 1992).

Given the state of the case law and the statutory provisions governing Mr. Luce's actions, this court finds that a clearly established exception to the general rule against warrantless searches and seizures exists and Mr. Luce is entitled to qualified immunity as a matter of law.

■ In addition to the warrantless search and seizure, the Plaintiff asserts a deprivation of her property in violation of the Due Process Clause of the Fourteenth Amendment. An individual has a property interest in her dogs. *Arrington v. Arrington,* 613 S.W.2d 565, 569 (Tex.Civ.App.—Fort Worth 1981, no writ). However, it is well-settled that post-deprivation remedies made available by the state can satisfy due process concerns. *Parratt v. Taylor,* 451 U.S. 527 at 538, 101 S.Ct. 1908 at 1914. "The fundamental requirement of due process is the opportunity to be heard and it is an 'opportunity which must be granted at a meaningful time and in a meaningful manner.'" *Parratt,* 451 U.S. at 540, 101 S.Ct. at 1915 (citing *Armstrong v. Manzo,* 380 U.S. 545, 552, 85 S.Ct. 1187, 1191, 14 L.Ed.2d 62 (1965)). A hearing at a meaningful time and in a meaningful manner does not *always* require the state to provide hearing prior to the initial deprivation of property. The rationale is based in part on the assumption that at some time a full and meaningful hearing will be available. *Parratt,* 451 U.S. at 541, 101 S.Ct. at 1916.

Ms. Gall has suffered no deprivation of her property in violation of the Fourteenth Amendment. The Plaintiff recovered her animals soon after their impoundment and was allowed to return home with them. The Plaintiff asserts no conduct which would rise to the level of a deprivation of property without due process of law.

The second step in the *Anderson* analysis requires the court to consider whether or not it was objectively reasonable for a state official to believe that his acts did not violate any rights. *Anderson v. Creighton,* 483 U.S. at 641, 107 S.Ct. at 3040. Because this court concludes that Mr. Luce did not violate any "clearly established" rights of the Plaintiff, it is unnecessary to reach the second step in the *Anderson* analysis.

Defendant's Motion for Judgment as a matter of law is Granted