[No. B088117. Second Dist., Div. One. May 8, 1996.]

NICHOLAS CONWAY et al., Plaintiffs and Appellants, v.
PASADENA HUMANE SOCIETY et al., Defendants and Appellants.

## COUNSEL

Knapp, Petersen & Clarke, David C. Haber and Cyril Czajkowskyj for Plaintiffs and Appellants.

McHale & Connor and Bruce Janger for Defendants and Appellants.

## OPINION

**MASTERSON, J.**—This appeal presents the question of whether animal control officers can lawfully enter a home, absent a warrant or consent, to seize and impound the homeowner's dog for violation of a leash law. We hold that the Fourth Amendment of the United States Constitution precludes such conduct.

### BACKGROUND

In 1956, the City of Pasadena (the City) adopted an ordinance, entitled the "animal ordinance," that provided for the care, custody, and control of animals (Pasadena Ord. No. 4384, codified as Pasadena Mun. Code, tit. 6). The ordinance created the position of poundmaster, whose duties include the seizing and impounding of dogs found running at large. (Pasadena Mun. Code, §§ 6.08.020, 6.08.080.) A dog is "at large" if it is "in or upon any public street, alley or other public place or in or upon any unenclosed lot or premises, unless [it] is securely confined by a strong leash securely and continuously held by the owner of such dog, or confined within an automobile." (*Id.*, § 6.04.020, subd. B.)

The poundmaster may be a natural person or a corporation and "shall be appointed by the legislative body of the city." (Pasadena Mun. Code, § 6.08.020.) The deputy poundmaster must be a natural person, who is authorized to carry out the powers and duties of the poundmaster. (*Id.*, § 6.08.040.) The deputy poundmaster "shall be vested with the powers and duties of a police officer of the city, and shall have the power and it shall be his duty to make arrests for violations of any of the provisions of this [ordinance]." (*Ibid.*) In that regard, he "shall enforce all of the laws and regulations of the city and state relating to the care, treatment, impounding and quarantining of dumb animals and to the prevention of cruelty to dumb animals." (*Ibid.*)

In July 1992, the City entered into a one-year contract with the Pasadena Humane Society (the Humane Society), a nonprofit corporation, appointing it as the poundmaster. Officers of the Humane Society serve as deputy poundmasters.

On February 4, 1993, Sergeant Endel Jurman of the Humane Society observed a dog running at large on the Brookside Golf Course in Pasadena. An hour later, he saw the same dog crossing West Drive. Based on his previous experience, Sergeant Jurman identified the dog as "Toby," a beagle belonging to Nicholas and Virginia Conway.[1] Jurman lost sight of Toby and radioed for assistance from other Humane Society officers. Officer Barry Blair responded that he had seen Toby "run home" to the Conway residence.[2] Jurman met Blair at that location.[3]

Blair told Jurman that Toby had run up the driveway and into the backyard. Jurman knocked on the front door of the house and received no response. In fact, no one was home. While the officers looked for Toby in the backyard, they noticed that one of the rear doors to the house was open approximately two feet. They assumed Toby had gone inside the residence.[4]

In accordance with Humane Society policy, the officers decided to enter the house without a warrant and seize Toby for running at large.[5] As Sergeant Jurman put it, "[W]e knew we were going to have to eventually take the dog out of the house."[6]

---

[1] Toby had been impounded, or a citation had been issued, on 14 prior occasions (over a 4½-year period) for various violations of the animal ordinance.

[2] Jurman and Blair serve as deputy poundmasters under the animal ordinance. In common parlance, they are often called animal control officers. They had also been duly appointed as "humane officers" under Civil Code section 607f, which governs the qualifications, appointment, and powers of such officers.

[3] According to the Conways, they did not let Toby run loose. Mr. Conway testified: "We never let the dog out. So at all times, he was supposed to be behind the locked gates of the premises." The Conways had problems with Toby running at large on Thursdays because the City's trash collectors occasionally left the gate open. (The present incident occurred on a Thursday.) Sergeant Jurman was aware of this problem.

[4] According to Mr. Conway, "The door was left unlocked. Toby knew how to open it. It was a self-closing type of thing." Apparently, on the day in question, the self-closing mechanism did not operate properly.

[5] If a dog has been running at large and the owner is not at home, it is the practice of the Humane Society to enter the residence without a warrant in order to seize and impound the dog. According to Sergeant Jurman, such entries are a "normal occurrence." If the dog's owner is at home, the animal is not impounded, so there is no need to enter the house or seize the dog.

[6] This was not the first time Sergeant Jurman decided to make a warrantless entry into the Conway residence. On an earlier occasion, at least a year before the present incident, he had

Before entering a residence while the occupants are away, Humane Society officers notify the Pasadena Police Department. Accordingly, Sergeant Jurman requested the assistance of the police, in part because he feared that a burglar might be in the Conway home. Two police officers, Chavira and Potekian, arrived within 15 minutes. While Jurman and Blair remained on the patio outside, the police entered the house through the partially open door and searched each of the rooms, the closets, and under the beds for signs of an intruder or a burglary. They found no one in the house and no evidence of a burglary. However, they did find Toby lying on a bed in one of the bedrooms. As Chavira testified, "[W]e closed two doors to the room to make sure the dog wouldn't get out." The windows were also closed, and the dog had no means of escape.

After completing their search, the police returned to the patio where Jurman and Blair were waiting. Chavira informed them that there was no burglary, that the house was secure, and that the dog was in one of the bedrooms. Jurman and Blair indicated that they wanted to enter the house in order to take the dog. Based on his conversation with Jurman, Chavira believed that the dog was a stray and did not belong on the property. He therefore allowed Jurman and Blair to enter the house. All four officers proceeded to the bedroom, and Jurman took possession of the dog. Had Chavira known that Toby belonged to the Conways, he would not have allowed the Humane Society officers to enter the house.

Sergeant Jurman posted a notice of impoundment on the front door of the Conway home and took Toby to the pound. The Conways were charged with a violation of the City's "leash law" (Pasadena Mun. Code, § 6.12.010), which is a misdemeanor.[7] Four months later, the Conways entered a plea of nolo contendere. They were placed on probation for two years and fined $500. Toby was returned to them at that time.

---

entered the home without a warrant to seize Toby for running at large. No one was at home on that occasion either, and Jurman entered the house through the back door.

[7] The leash law states in pertinent part: "No person owning, having an interest in, harboring or having charge, care, control, custody or possession of any dog shall cause or permit such dog to be in or upon any public street, alley or other public place or in or upon any unenclosed lot or premises, unless such dog is securely confined by a strong cord, chain or leash, not exceeding 6 feet, securely and continuously held by a competent person owning, having an interest in, harboring or having charge, care, control, custody or possession of such dog, or unless such dog is confined within an automobile." (Pasadena Mun. Code, § 6.12.010.) Any person who violates the leash law "is deemed guilty of a misdemeanor, and upon conviction thereof shall be punishable by a fine of not more than $500.00 or by imprisonment in the city jail for a period of not more than 6 months, or by both such fine and imprisonment." (*Id.*, § 6.04.050.)

In September 1993, the Conways filed this action against the Humane Society, the City, and Jurman.[8] The gravamen of the action is a federal civil rights claim (42 U.S.C. § 1983) alleging that defendants violated the Conways' rights under the Fourth Amendment to be free from unreasonable searches and seizures.[9] After engaging in discovery, defendants moved for summary judgment in June 1994.[10] The trial court granted the motion on the ground that defendants had not violated the Fourth Amendment. Defendants then moved for attorney fees, which the court denied. Judgment was entered on August 22, 1994. The Conways filed a timely appeal from the summary judgment ruling, and defendants filed a timely cross-appeal from the order denying their motion for fees.

## DISCUSSION

■ In reviewing a summary judgment, the moving party's evidence is strictly construed while that of the opposing party is liberally construed. (*Hanooka* v. *Pivko* (1994) 22 Cal.App.4th 1553, 1558 [28 Cal.Rptr.2d 70].) We accept as undisputed facts only those portions of the moving party's evidence that are not contradicted by the opposing party's evidence. (*Kelleher* v. *Empresa Hondurena de Vapores, S.A.* (1976) 57 Cal.App.3d 52, 56 [129 Cal.Rptr. 32].) In other words, the facts alleged in the evidence of the party opposing summary judgment must be accepted as true. (*Zeilman* v. *County of Kern* (1985) 168 Cal.App.3d 1174, 1179, fn. 3 [214 Cal.Rptr. 746].)

Summary judgment is appropriate if all the papers submitted show that there is no triable issue as to any material fact and that the moving party is

---

[8]Because the complaint did not correctly name Sergeant Jurman, he was served as a Doe defendant. A default was entered against him, which was later set aside. The case then proceeded as to all three defendants. For convenience, we occasionally refer to the Humane Society, the City, and Jurman collectively as "defendants."

[9]Title 42, United States Code section 1983 states that "[e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . , subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress."

The complaint further alleged causes of action for trespass, interference with chattel, conversion, negligence, loss of consortium, invasion of privacy, intentional and negligent infliction of emotional distress, violation of the California Constitution's prohibition on unreasonable searches and seizures, and conspiracy. The Conways also sought injunctive relief to prevent defendants from depriving individuals of their civil rights.

[10]According to defendants, the trial court had sustained a demurrer without leave to amend as to the causes of action for interference with chattel and loss of consortium. (See fn. 9, *ante*.) The summary judgment motion was directed at the remaining causes of action. On appeal, the Conways have not challenged the ruling on the demurrer.

entitled to judgment as a matter of law. (Code Civ. Proc., § 437c, subd. (c).) "A defendant seeking summary judgment has met the burden of showing that a cause of action has no merit if that party has shown that one or more elements of the cause of action cannot be established [or that there is a complete defense to that cause of action]. . . . Once the defendant's burden is met, the burden shifts to the plaintiff to show that a triable issue of fact exists as to that cause of action. . . . In reviewing the propriety of a summary judgment, the appellate court independently reviews the record that was before the trial court. . . . We must determine whether the facts as shown by the parties give rise to a triable issue of material fact." (*Hanooka* v. *Pivko, supra*, 22 Cal.App.4th at p. 1558, citations omitted; see also Code Civ. Proc., § 437c, subd. (*o*)(2).)

On appeal, defendants argue that summary judgment was properly granted because, as a matter of law, they did not violate the Conways' Fourth Amendment rights. Alternatively, defendants contend that, as a matter of law, they were entitled to qualified immunity based on Jurman's objectively reasonable belief that he could enter the Conway residence without a warrant. We disagree with both contentions and reverse.

## A. *Violation of the Fourth Amendment*

The Fourth Amendment to the United States Constitution, made applicable to the states by the Fourteenth Amendment (*Mapp* v. *Ohio* (1961) 367 U.S. 643 [6 L.Ed.2d 1081, 81 S.Ct. 1684, 84 A.L.R.2d 933]), provides: "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized."

"The Fourth Amendment protects the individual's privacy in a variety of settings. In none is the zone of privacy more clearly defined than when bounded by the unambiguous physical dimensions of an individual's home—a zone that finds its roots in clear and specific constitutional terms: 'The right of the people to be secure in their . . . houses . . . shall not be violated.' That language unequivocally establishes the proposition that '[a]t the very core [of the Fourth Amendment] stands the right of a man to retreat into his own home and there be free from unreasonable governmental intrusion.' . . . In terms that apply equally to seizures of property and to seizures of persons, the Fourth Amendment has drawn a firm line at the entrance to the house. Absent exigent circumstances, that threshold may not

reasonably be crossed without a warrant." (*Payton* v. *New York* (1980) 445 U.S. 573, 589-590 [63 L.Ed.2d 639, 653, 100 S.Ct. 1371], citation omitted.)

"It is axiomatic that the 'physical entry of the home is the chief evil against which the wording of the Fourth Amendment is directed.' . . . And a principal protection against unnecessary intrusions into private dwellings is the warrant requirement imposed by the Fourth Amendment on agents of the government who seek to enter the home for purposes of search or arrest." (*Welsh* v. *Wisconsin* (1984) 466 U.S. 740, 748 [80 L.Ed.2d 732, 742, 104 S.Ct. 2091], citation omitted.) " 'It is settled doctrine that probable cause for belief that certain articles subject to seizure are in a dwelling cannot of itself justify a search without a warrant.' " (*Payton* v. *New York*, *supra*, 445 U.S. at p. 588, fn. 26 [63 L.Ed.2d at p. 652].) Thus, a warrantless entry into a residence is presumptively unreasonable and therefore unlawful. (*People* v. *Williams* (1988) 45 Cal.3d 1268, 1297 [248 Cal.Rptr. 834, 756 P.2d 221], cert. den. 488 U.S. 1050 [102 L.Ed.2d 1006, 109 S.Ct. 883].) Government officials "bear a heavy burden when attempting to demonstrate an urgent need that might justify warrantless searches or arrests." (*Welsh* v. *Wisconsin*, *supra*, 466 U.S. at pp. 749-750 [80 L.Ed.2d at p. 743].)

■ Absent consent, exigent circumstances must exist for a warrantless entry into a home, despite probable cause to believe that a crime has been committed or that incriminating evidence may be found inside. (*People* v. *Ortiz* (1995) 32 Cal.App.4th 286, 291 [38 Cal.Rptr.2d 59]; *People* v. *Mitchell* (1990) 222 Cal.App.3d 1306, 1312 [272 Cal.Rptr. 440]; *People* v. *Williams*, *supra*, 45 Cal.3d at pp. 1297-1298.) Such circumstances are "few in number and carefully delineated." (*United States* v. *United States District Court* (1972) 407 U.S. 297, 318 [32 L.Ed.2d 752, 767, 92 S.Ct. 2125].) "Exigent circumstances" means "an emergency situation requiring swift action to prevent imminent danger to life or serious damage to property, or to forestall the imminent escape of a suspect or destruction of evidence." (*People* v. *Ramey* (1976) 16 Cal.3d 263, 276 [127 Cal.Rptr. 629, 545 P.2d 1333], cert. den. 429 U.S. 929 [50 L.Ed.2d 299, 97 S.Ct. 335]; see also *People* v. *Camilleri* (1990) 220 Cal.App.3d 1199, 1205-1210 [269 Cal.Rptr. 862].)

There is no litmus test for determining whether exigent circumstances exist, and each case must be decided on the facts known to the officers at the time of the search or seizure. (*People* v. *Ramey*, *supra*, 16 Cal.3d at p. 276.) However, two primary considerations in making this determination are the gravity of the underlying offense and whether the delay in seeking a warrant would pose a threat to police or public safety. (*People* v. *Mitchell*, *supra*, 222 Cal.App.3d at p. 1312.) As the United States Supreme Court has stated: "Our

hesitation in finding exigent circumstances, especially when warrantless arrests in the home are at issue, is particularly appropriate when the underlying offense for which there is probable cause to arrest is relatively minor. Before agents of the government may invade the sanctity of the home, the burden is on the government to demonstrate exigent circumstances that overcome the presumption of unreasonableness that attaches to all warrantless home entries. . . . When the government's interest is only to arrest for a minor offense, that presumption of unreasonableness is difficult to rebut, and the government usually should be allowed to make such arrests only with a warrant issued upon probable cause by a neutral and detached magistrate. [¶] . . . [¶] . . . Indeed, without . . . considering every possible factual situation, we note that it is difficult to conceive of a warrantless home arrest that would not be unreasonable under the Fourth Amendment when the underlying offense is extremely minor." (*Welsh* v. *Wisconsin*, *supra*, 466 U.S. at pp. 750, 753 [80 L.Ed.2d at pp. 743, 745], citation and fn. omitted.)

Finally, even where exigent circumstances exist, " '[t]he search must be "strictly circumscribed by the exigencies which justify its initiation." ' " (*People* v. *Cain* (1989) 216 Cal.App.3d 366, 372 [264 Cal.Rptr. 339].) "An exigent circumstance may justify a search without a warrant. However, after the emergency has passed, the [homeowner] regains his right to privacy, and . . . a second entry [is unlawful]." (*People* v. *Bradley* (1982) 132 Cal.App.3d 737, 744 [183 Cal.Rptr. 434]; accord, *People* v. *Boragno* (1991) 232 Cal.App.3d 378, 386-387 [283 Cal.Rptr. 452].)

For example, in *People* v. *Bradley*, *supra*, 132 Cal.App.3d 737, the police entered Dwight Bradley's apartment without a warrant after a neighbor reported a possible burglary in his unit. While inside, the officers found no one present but saw a clear plastic bag containing pills, hashish, and marijuana. They examined several items in the apartment but left without seizing anything. An officer then secured the dwelling by remaining outside. Thirty minutes later, the officers reentered the apartment, again without a warrant, this time accompanied by a member of the narcotics task force. They seized various items, including the plastic bag. (*Id.* at pp. 741-742.)

The Court of Appeal concluded that the first entry into the apartment—to investigate a possible burglary in progress—was justified by exigent circumstances. (132 Cal.App.3d at pp. 743-744.) However, the court found that the second entry was unlawful, stating: "California cases upholding the right of officers to reenter a residence to seize contraband previously observed during lawful entries uniformly stress the officers' initial entry was terminated because the officers were concerned for their safety . . .' or the

reentry itself was justified by exigent circumstances to preserve life . . . . Given there was no longer an exigency to justify an entry, the reentry of the narcotics force along with the investigating officers violated Bradley's constitutional rights. The apartment was secured and the contraband in no danger of being dissipated. There was nothing to prevent them from continuing efforts to obtain a search warrant through regular affidavit procedures . . . ." (*Id.* at p. 746, citations omitted.)

In sum, "[t]he presence of a search warrant serves a high function. Absent some grave emergency, the Fourth Amendment has interposed a magistrate between the citizen and the police. This was done not to shield criminals nor to make the home a safe haven for illegal activities. It was done so that an objective mind might weigh the need to invade that privacy in order to enforce the law. . . . We cannot be true to that constitutional requirement and excuse the absence of a search warrant without a showing by those who seek exemption from the constitutional mandate that the exigencies of the situation made that course imperative." (*McDonald* v. *United States* (1948) 335 U.S. 451, 455-456 [93 L.Ed. 153, 158, 69 S.Ct. 191].)

■■■ In this case, the Conways contend that defendants are liable for several distinct violations of the Fourth Amendment. First, they claim that defendants lacked probable cause to believe that Toby had been running at large. Second, they argue that defendants committed three separate unlawful searches or seizures—when the Humane Society officers entered the yard, when the police first entered the house to check for a burglar, and when the Humane Society officers later entered the house to seize the dog.

Because this appeal arises from the granting of summary judgment, we need not reach all of the Conways' contentions if one of them has merit. Since we conclude that the animal control officers could not lawfully enter the Conway home to seize the dog, we do not reach any of the Conways' other Fourth Amendment claims.

As a preliminary matter, we note the comments made by the Conways' attorney at the oral argument before the trial court: "The facts of this case, your Honor, are both humorous [and] ridiculous but also outrageous and kind of scary." No doubt, a civil rights suit about the impounding of an animal—especially a dog that often runs afoul of the City's leash law—may seem ridiculous. Further, the City argues that the police should be commended, not made the subject of a suit, for protecting the Conway home from a possible burglar. On the other hand, many citizens would probably express concern about the Humane Society's practice of entering a home

without a warrant or consent for the sole purpose of impounding a pet seen running at large. (See fn. 5, *ante.*)

Even if exigent circumstances permitted the police to enter the Conway home and search for a burglar (cf. *People v. Bradley, supra,* 132 Cal.App.3d at pp. 741-744)—an issue on which we express no opinion—such circumstances did not exist after the police completed their initial search. No one was inside the house, and the dog was safely secured in one of the bedrooms. Defendants do not contend that Toby posed a danger to anyone or anything at that time. (Cf. *In re Quackenbush* (1996) 41 Cal.App.4th 1301, 1306-1307 [49 Cal.Rptr.2d 147] [where dog has bitten someone, exigent circumstances may justify warrantless seizure of dog from residence if necessary to determine whether dog has rabies]; see also *Camara v. Municipal Court* (1967) 387 U.S. 523 [18 L.Ed.2d 930, 87 S.Ct. 1727] [Fourth Amendment precludes warrantless searches of residence to enforce municipal fire, health, and housing codes].) On the contrary, the police indicated that Toby was lying on the bed, that he was not disruptive, and that he had done nothing improper inside the house.

The infraction at issue—violation of the City's leash law—is a minor offense. Moreover, defendants have not argued that they lacked the time needed to obtain a warrant. This is understandable, given that the police had secured the house and confined Toby in a bedroom.[11] We therefore conclude that exigent circumstances did not justify the animal control officers' entry into the Conway home. (See *People v. Mitchell, supra,* 222 Cal.App.3d at p. 1312.)[12]

Thus, "[i]t appears that the initial emergency had dissipated after the [police] officers had conducted the initial sweep of the premises . . . . [T]here were no sufficient exigent circumstances to justify the second warrantless entry and seizure. [¶] . . . [In short,] there was an initial emergency which ceased to exist before the warrantless reentry." (*People v. Boragno, supra,* 232 Cal.App.3d at pp. 386-387.) Without exigent circumstances or consent,[13] the Fourth Amendment precluded the animal control

---

[11]Sergeant Jurman testified that he could have sought a warrant while in the field by contacting the watch commander of the Pasadena Police Department, who would have filled out the warrant and sought a judge's signature. Jurman assumed that this procedure would have taken very little time.

[12]Because the officers did not even attempt to obtain a warrant, we do not reach the question of whether they could have properly obtained one in the circumstances of this case.

[13]Defendants do not contend that the Conways consented to any search or seizure.

officers from making a warrantless entry into the Conway residence to enforce the leash law.[14]

■ Consistent with the practice of Humane Society officers in the field, on appeal defendants largely ignore the issue of whether exigent circumstances justified the entry into the Conway home. Instead, they rely on statutory authority for the proposition that animal control officers can make a warrantless, nonconsensual entry into a residence to seize the homeowner's dog for a prior violation of the leash law.[15] In particular, defendants rely on Government Code section 53074, which states in part: "A dog that has strayed from but then returned to the private property of his owner or the person who has a right to control the dog shall not be seized or impounded, but in such a case a citation may be issued; provided, however, that if in such a situation the owner or person who has a right to control the dog is not home, the dog may be impounded, but the officer or employee of any animal control agency shall post a notice of such impounding on the front door of the living unit of the owner or person who has a right to control the dog." Similarly, Pasadena Municipal Code section 6.08.110 states: "The poundmaster is authorized to enter upon any premises upon which any animal is kept, for the purpose of taking up, seizing or impounding any animal found running at large . . . ."

We do not read these enactments as dispensing with the Fourth Amendment's requirement that an official entry into a home be justified by a warrant, consent, or exigent circumstances. "A statute does not trump the Constitution." (*People* v. *Ortiz, supra*, 32 Cal.App.4th at p. 292, fn. 2.) A nonconsensual entry into a home "is simply too substantial an invasion to

---

[14]While another Court of Appeal has also concluded that a warrant was necessary for animal control officers to seize a dog from a residence (*In re Quackenbush, supra*, 41 Cal.App.4th at p. 1307), we note that very few cases have involved Fourth Amendment rights in the context of animal control. A federal district court has upheld a warrantless entry onto private property to investigate a complaint about dogs running at large where the lessee of the property consented to the search. (*Engsberg* v. *Town of Milford* (W.D.Wis. 1985) 601 F.Supp. 1438, 1442-1443, affd. mem. (7th Cir. 1986) 785 F.2d 312.) Another federal court has held that an animal control officer may enter private property without a warrant to seize abused dogs where he first views their abuse from outside the premises. (*Gall* v. *City of Vidor, Tex.* (E.D.Tex. 1995) 903 F.Supp. 1062, 1066.) However, in Illinois, the presence of "pit bulls" at a residence does not create exigent circumstances dispensing with a "knock and announce" rule before conducting a search pursuant to a warrant. (*People* v. *Riddle* (1994) 258 Ill.App.3d 253, 260-261 [196 Ill.Dec. 444, 630 N.E.2d 141, 146-147].) And the United States Court of Appeals for the Eighth Circuit has held that the Fourth Amendment precludes jail officials from strip-searching a person charged with violating a leash law. (*Jones* v. *Edwards* (8th Cir. 1985) 770 F.2d 739.)

[15]We refer to a "prior" violation of the leash law because the dog is obviously not "at large" while inside the house. At that point, the leash law is not being violated.

allow without a warrant, at least in the absence of exigent circumstances, *even when it is accomplished under statutory authority* and when probable cause is clearly present." (*Payton* v. *New York, supra,* 445 U.S. at p. 589 [63 L.Ed.2d at p. 652], italics added.)

It does not follow, however, that Government Code section 53074 and Pasadena Municipal Code section 6.08.110 are unconstitutional. Where a statute is susceptible of several interpretations, one of which raises serious constitutional problems, we will construe the statute, if possible, to avoid those problems. (See *DeBartolo Corp.* v. *Fla. Gulf Coast Trades Council* (1988) 485 U.S. 568, 575 [99 L.Ed.2d 645, 654-655, 108 S.Ct. 1392].) Here, neither the Government Code nor the Pasadena Municipal Code addresses, much less authorizes, warrantless searches of a private residence without consent or exigent circumstances. While both codes permit the impounding of a dog found on private property, that authorization does not conflict with the requirements of the Fourth Amendment. Plainly, an animal control officer can seize a dog from a residence and also comply with the Fourth Amendment. Accordingly, we refuse to interpret these regulatory provisions as authorizing the type of search and seizure conducted by the Humane Society in this case.

Based on the record before us, we conclude that the Fourth Amendment precluded the animal control officers from entering the Conway home to seize Toby for running at large.[16]

B. *Qualified Immunity*

"[A]n action for damages may offer the only realistic avenue for vindication of constitutional guarantees." (*Harlow* v. *Fitzgerald* (1982) 457 U.S. 800, 814 [73 L.Ed.2d 396, 407-408, 102 S.Ct. 2727].) At the same time, however, suits against public officers impose significant social costs, including the risk that personal liability will interfere with the proper discharge of official duties. (*Ibid.*) To accommodate these competing interests, a public officer performing a discretionary function enjoys qualified immunity, which shields him from liability for civil damages unless he knew or should have known that his actions would violate a clearly established constitutional

[16]As stated, the question of whether exigent circumstances will justify a given search or seizure must be decided on a case-by-case basis. Consequently, we do not suggest that animal control officers must always obtain a warrant before seizing an animal on private property.

or statutory right. (*Southern Cal. Rapid Transit Dist.* v. *Superior Court* (1994) 30 Cal.App.4th 713, 730-731 [36 Cal.Rptr.2d 665].)[17]

As the United States Supreme Court has stated: "[O]ur cases establish that the right the official is alleged to have violated must have been 'clearly established' in a more particularized, and hence more relevant, sense: The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right. This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful .. . . , but it is to say that in the light of pre-existing law the unlawfulness must be apparent. . . . [¶] . . . [¶] It follows from what we have said that the determination whether it was objectively legally reasonable to conclude that a given search was supported by . . . exigent circumstances will often require examination of the information possessed by the searching officials. . . . The relevant question in this case, for example, is the objective (albeit fact-specific) question whether a reasonable officer could have believed [that the] warrantless search [was] lawful, in light of clearly established law and the information the searching officers possessed. [The particular officer's] subjective beliefs about the search are irrelevant." (*Anderson* v. *Creighton* (1987) 483 U.S. 635, 640-641 [97 L.Ed.2d 523, 530-532, 107 S.Ct. 3034], citations omitted.)

▮ In this case, the Conways seek to impose liability on Sergeant Jurman based on his entry into their home in February 1993. As of that time, the Fourth Amendment, as construed by state and federal courts, clearly precluded a warrantless, nonconsensual entry into a home absent exigent circumstances. Indeed, this fundamental principle of Fourth Amendment jurisprudence was well established long before February 1993, and it remains the law today. As we have already explained, the record before us does not suggest that any exigent circumstances justified the entry into the Conway home to seize Toby.

Further, an officer's unreasonable ignorance that he has violated a clearly established right does not save his claim of qualified immunity. (*Gilker* v. *Baker* (9th Cir. 1978) 576 F.2d 245, 247; *Coleman* v. *McHenry* (E.D.Va. 1990) 735 F.Supp. 190, 193, affd. mem. (4th Cir. 1991) 945 F.2d 398.) A public officer is presumed to know the law, provided it is clearly established.

---

[17]A qualified immunity defense protects individual officers, not municipalities or other governmental entities. (*Leatherman* v. *Tarrant County Narcotics Intelligence and Coordination Unit* (1993) 507 U.S. 163, 166 [122 L.Ed.2d 517, 523, 113 S.Ct. 1160]; *Owen* v. *City of Independence* (1980) 445 U.S. 622, 638 [63 L.Ed.2d 673, 685-686, 100 S.Ct. 1398].) Thus, the Humane Society and the City cannot invoke this defense.

(*Skevofilax* v. *Quigley* (D.N.J. 1984) 586 F.Supp. 532, 538.) Thus, it is of no consequence that Humane Society officers may not have understood basic Fourth Amendment principles.[18]

Finally, we do not conclude that Government Code section 53074 or Pasadena Municipal Code section 6.08.110 confers qualified immunity on Sergeant Jurman as a matter of law. While it is relevant to consider the existence and effect of such laws in determining a qualified immunity defense (*Ayler* v. *Hopper* (M.D.Ala. 1981) 532 F.Supp. 198, 200), we cannot say as a matter of law that a reasonable officer would interpret those laws to dispense with the Fourth Amendment's warrant requirement. Arguably, a reasonable officer would read both the statute and the municipal code consistently with the Fourth Amendment, i.e., to require a warrant for a nonconsensual entry into a home absent exigent circumstances. This conclusion is supported by the testimony of Police Officer Chavira, who stated that he allowed the animal control officers to enter the Conway residence only because he thought Toby was a stray.[19] It would also be helpful to know how animal control officers in other California jurisdictions interpret Government Code section 53074 and their own ordinances, if any, which are similar to Pasadena's. The views of any animal control associations and organizations, on the state or national levels, may also be of assistance.

Accordingly, we conclude that the qualified immunity doctrine did not justify summary judgment in Sergeant Jurman's favor.

### C. *Other Causes of Action*

The trial court granted summary judgment on the Conways' remaining causes of action—for trespass, conversion, negligence, invasion of privacy, intentional and negligent infliction of emotional distress, violation of the California Constitution's prohibition on unreasonable searches and seizures, and conspiracy—based on its conclusion that Officers Jurman and Blair had lawfully entered the Conway home to seize Toby. Our decision eliminates the trial court's basis for dismissing these additional claims, and there is no alternative ground for upholding summary adjudication as to them.

Nor are we prepared to uphold the dismissal of the Conways' request for injunctive relief, which seeks to prevent defendants from violating the Fourth Amendment rights of pet and property owners in Pasadena. Although

---

[18]In fact, Jurman and Blair had received training on the subject of search warrants.

[19]We do not address the question of whether a warrant is necessary when an apparently stray dog takes refuge in someone's home. We simply find it relevant that Officer Chavira thought Jurman could not enter the residence to seize a dog that belonged to the homeowner.

it is not disputed that Toby died in 1993, defendants have not addressed whether the Conways own some other pet subject to the City's leash law. As long as that possibility exists, the request for an injunction is not moot. (See 6 Witkin, Cal. Procedure (3d ed. 1985) Provisional Remedies, § 281, pp. 240-241 [discussing mootness]; 3 Witkin, *op. cit. supra*, Actions, § 50, pp. 80-83 [same].)

Thus, the trial court improperly granted summary judgment. Given our reversal of the judgment, it follows that defendants are not entitled to attorney fees for having prevailed below.

### DISPOSITION

The judgment is reversed. Nicholas and Virginia Conway are entitled to costs on appeal.

Ortega, Acting P. J., and Vogel (Miriam A.), J., concurred.

The petition of defendants and appellants for review by the Supreme Court was denied August 21, 1996.