[No. B088737. Second Dist., Div. Six. Jan. 18, 1996.]

In re DANIEL A. QUACKENBUSH on Habeas Corpus.

COUNSEL

Thomas W. Sneddon, Jr., District Attorney, and Gerald McC. Franklin, Deputy District Attorney, for Appellant.

Maureen DeMaio for Respondent.

OPINION

GILBERT, J.—Under former Health and Safety Code section 1924 (now section 121710) it is a misdemeanor to fail to produce on demand of a local health officer an animal that has bitten or otherwise exposed a person to rabies.[1] We hold the section does not dispense with the Fourth Amendment requirement for obtaining a search warrant in all cases. We affirm the judgment granting defendant's writ of habeas corpus.

FACTS

The facts are undisputed. On August 17, 1994, Animal Control Officer Frank Wagner learned that a dog bite had occurred earlier that day at the residence of Daniel A. and Beverly Quackenbush. There he discovered that the dog did not belong to the Quackenbushes, but they were watching it until the owners returned. Because Wagner could not determine whether the dog had been vaccinated for rabies, he ordered it to be quarantined.

Beverly Quackenbush signed an agreement to keep the dog quarantined at her home for 10 days and to notify the authorities immediately if the dog

---

[1] All statutory references are to the Health and Safety Code unless otherwise stated.

escaped, becomes ill, or died. Later, Wagner was told by a supervisor that the dog could not be quarantined at the Quackenbushes' home because they were not the dog's owners.

On August 18 Wagner returned to the Quackenbush residence and ordered Daniel A. Quackenbush to turn over the dog to him. Quackenbush refused to turn over the dog unless Officer Wagner first obtained a search warrant.

On August 19 Quackenbush again refused to turn over the dog without a warrant. Officer Wagner cited him for violating former section 1924.

Former section 1924 provided: "Any person who, after notice, violates any order of a local health officer concerning the isolation or quarantine of an animal of a species subject to rabies, which has bitten or otherwise exposed a person to rabies or who, after that order, fails to produce the animal upon demand of the local health officer, is guilty of a misdemeanor . . . ."

Because Quackenbush refused to sign the citation, he was arrested and later released on his own recognizance. After Quackenbush's arrest, Officer Wagner obtained an administrative search warrant and took the dog.

Quackenbush filed an unsuccessful motion to suppress evidence pursuant to Penal Code section 1538.5. The complaint was amended to charge violation of both former sections 1923 and 1924.

Former section 1923 (now section 121705) provided in part: "Any person who willfully conceals information about the location or ownership of an animal subject to rabies, which has bitten or otherwise exposed a person to rabies, with the intent to prevent the quarantine or isolation of that animal by the local health officer is guilty of a misdemeanor."

After Quackenbush's motion to suppress was denied in the municipal court, he filed a pretrial petition for writ of habeas corpus in the superior court. The People opposed the petition on the grounds that Quackenbush had an adequate remedy at law by way of trial and appeal, and that, in any event, no warrant was necessary under former section 1924.

The trial court granted the petition, ordering the municipal court to cease all further action in the case against Quackenbush. The trial court saw no reason why an administrative search warrant could not have been obtained. It found there was no emergency. An animal control officer was at the Quackenbush house two or three days in a row.

## DISCUSSION

### I

On appeal the People concede that under these particular facts a petition for writ of habeas corpus was appropriate.

■ Although habeas corpus will not ordinarily lie as a substitute for appeal or as a second appeal (*In re Harris* (1993) 5 Cal.4th 813, 826 [21 Cal.Rptr.2d 373, 855 P.2d 391]), a court has the discretion to issue a writ if a prompt disposition is required in the interest of justice. (*In re Duran* (1974) 38 Cal.App.3d 632, 635 [113 Cal.Rptr. 442].) This is particularly so when the case involves a constitutional issue. (See *Camara* v. *Municipal Court* (1967) 387 U.S. 523 [18 L.Ed.2d 930, 87 S.Ct. 1727].)

Here the facts were not in dispute and the matter could be resolved by deciding a single legal issue. Because Quackenbush's contention had merit, the trial court believed the interests of justice would not be served by requiring him to submit to trial and possible sentence. Under similar circumstances our Supreme Court has used pretrial writs to dispose of criminal cases. (See, e.g., *In re Berry* (1968) 68 Cal.2d 137 [65 Cal.Rptr. 273, 436 P.2d 273]; *In re Allen* (1962) 59 Cal.2d 5 [27 Cal.Rptr. 168, 377 P.2d 280, 97 A.L.R.2d 1415].) The United States Supreme Court has done the same. (See *Camara* v. *Municipal Court, supra,* 387 U.S. 523 [18 L.Ed.2d 930].) The trial court did not abuse its discretion.

Nor would it be helpful for Quackenbush to plead guilty, reserving the issue for appeal. It is problematic whether he could produce an adequate record of the facts under such an approach.

Moreover, no useful purpose would be served by ordering the writ dismissed now. The substantive question raised by Quackenbush is before us, and has been fully briefed by the parties. In the interest of judicial economy we decide the question.

### II

■ The Fourth Amendment to the United States Constitution provides against unreasonable searches and seizures of a person's house, papers and effects. Except in certain carefully defined classes of cases, a search of private property without proper consent is unreasonable unless it has been authorized by a valid search warrant. (*Camara* v. *Municipal Court, supra,* 387 U.S. 523, 528-529 [18 L.Ed.2d 930, 935-936].)

■ Here the People concede that the Fourth Amendment applies to the seizure of the dog from Quackenbush's house. Nevertheless, the People contend that under former section 1924 Quackenbush was required to turn the dog over to Officer Wagner without a warrant. The contention is untenable.

In *Camara* v. *Municipal Court, supra,* 387 U.S. 523 [18 L.Ed.2d 930], the city had an ordinance providing that authorized employees had the right to enter any building or premises to perform any duty imposed by the municipal code. Another ordinance made it a misdemeanor to refuse to comply with an order of the director of public health or to resist the execution of any provision of the code.

The defendant refused to allow an employee of the department of public health access to his apartment to inspect for possible housing code violations. The defendant's refusal was made on the ground that the inspector lacked a search warrant. After a number of attempts to gain access without a warrant, the defendant was charged with a misdemeanor for refusing to permit the inspection.

In granting the defendant a writ of prohibition the Supreme Court stated: "In this case, appellant has been charged with a crime for his refusal to permit housing inspectors to enter his leasehold without a warrant. There was no emergency demanding immediate access; in fact, the inspectors made three trips to the building in an attempt to obtain appellant's consent to search. . . . Assuming the facts to be as the parties have alleged, we therefore conclude that appellant had a constitutional right to insist that the inspectors obtain a warrant to search and that appellant may not constitutionally be convicted for refusing to consent to the inspection." (*Camara* v. *Municipal Court, supra,* 387 U.S. 523, 540 [18 L.Ed.2d 930, 942].)

The People seek to distinguish *Camara* on the ground that every dog bite creates an emergency justifying a warrantless seizure of the dog. In support of this argument the People point to the deadly nature of rabies.

There is no doubt that exigent circumstances may justify a warrantless seizure. (See *U.S.* v. *Lingenfelter* (9th Cir. 1993) 997 F.2d 632, 640.) Here, however, neither the Legislature, nor the State Department of Public Health, nor the local officer has found every dog bite to give rise to such exigent circumstances that a seizure of the dog is deemed necessary. To the contrary, State Department of Health Services regulations provide for isolation of a biting animal "[a]t the discretion of the local health officer . . . in a place and manner approved by the local health officer . . . ." (Cal. Code Regs.,

tit. 17, § 2606, subd. (b)(2).) It is only when an animal has rabies or exhibits the clinical symptoms of rabies that isolation in a pound, veterinary hospital or other adequate facility is required. (Cal. Code Regs., tit. 17, § 2606, subd. (b)(1).)

If Quackenbush had initially refused to produce the dog, he would have been in violation of the statute. In such a case he would have prevented the animal control officer from making a determination whether the dog could be quarantined at Quackenbush's home or whether it should be taken into the officer's custody.

Even upon first seeing a dog, the local health officer in most instances would be empowered to take it into his or her custody without first obtaining a warrant whether or not the dog exhibits rabies. That however, is not the case here. The facts are more narrow. In the exercise of his discretion, the health officer determined that the dog could be safely quarantined at Quackenbush's house. The officer still had the discretion to seize the dog at a later time and place it in quarantine elsewhere. But under such circumstances, the health officer must first obtain a warrant in the absence of exigent circumstances or consent.

Here there was no showing of exigent circumstances. When Officer Wagner learned of the dog bite on August 17 he saw the dog and determined it could be safely quarantined with the Quackenbushes. He returned on the 18th and 19th to demand that Quackenbush turn over the dog. There was no showing the demand was motivated by a suspected change in the dog's condition, or that the dog was in imminent danger of escaping quarantine, or that others were in imminent danger of being attacked by the dog.

Moreover, in order for exigent circumstances to excuse obtaining a warrant, the government must show the warrant could not have been obtained in time. (*U.S.* v. *Tarazon* (9th Cir. 1993) 989 F.2d 1045, 1049.) Here the government failed to make such a showing. Even Quackenbush's arrest was given more priority than obtaining the warrant.

The People's reliance on *Love* v. *Superior Court* (1990) 226 Cal.App.3d 736 [276 Cal.Rptr. 660] is misplaced. There, petitioners convicted of soliciting an act of prostitution, were ordered to undergo AIDS testing. The order was mandated by Penal Code section 1202.6 requiring all persons so convicted to submit to testing. Petitioners challenged section 1202.6 as violative of the Fourth Amendment in that it required testing without a warrant, probable cause, or any individual suspicion. The Court of Appeal balanced the compelling "special need" of the government to prevent the spread of

AIDS against the minimal intrusion of a blood test. The court concluded the Fourth Amendment balancing must be struck in favor of the testing requirement. (226 Cal.App.3d at p. 746.)

There are few circumstances where a special need of the government is so compelling that it justifies dispensing with the traditional Fourth Amendment protections. This is not one of those circumstances. Unlike the situation in *Love*, the government official here has discretion. The State Department of Health Services' regulatory scheme does not require local officials in every instance to seize a biting dog that does not exhibit symptoms of rabies. This belies the notion that the government had a compelling special need to seize the dog from the Quackenbush home without a warrant.

The People accuse Quackenbush of distorting the issue. They assert he has converted a demand that he turn over a dog belonging to another into a warrantless attempt to search his home.

Even if Officer Wagner did not want to search Quackenbush's home, it is uncontested that Officer Wagner wanted to seize the dog. The Fourth Amendment protects against unreasonable seizures of property even in the absence of a search. (*Soldal* v. *Cook County* (1992) 506 U.S. 56, 68 [121 L.Ed.2d 450, 463, 113 S.Ct. 538].)

A seizure of property occurs when there is some meaningful interference with a person's possessory interests in that property. (*Soldal* v. *Cook County*, *supra*, 506 U.S. at p. 63 [121 L.Ed.2d at p. 459].) It may be argued that Quackenbush had mere custody rather than a possessory interest in the dog. But the People cite no case that draws the fine distinction between lawful custody and legal possession with respect to Fourth Amendment protections.

The dissent suggests that Quackenbush had an adequate remedy by way of an "appeal" from his motion to suppress. (Dis. opn., *post*, at p. 1309, citing Pen. Code, § 1538.5, subd. (j).)

But Penal Code section 1538.5 provides for the suppression of unlawfully seized evidence. It is true Quackenbush brought a motion to suppress in the trial court, but there was no unlawfully seized evidence. The dog was seized pursuant to a warrant. Quackenbush's complaint is that he was arrested for insisting on his Fourth Amendment rights (see *Camara* v. *Municipal Court*, *supra*, 387 U.S. at p. 540 [18 L.Ed.2d at p. 942]), not that evidence had been unlawfully seized. Therefore it is unlikely the municipal court denied the section 1538.5 motion because it had found exigent circumstances. In any event, there is no evidence to support such a finding.

## III

Finally, the People argue that even if a warrant was necessary to seize the dog, the trial court had no basis for prohibiting prosecution under former section 1923.

A violation of former section 1923 required willfully concealing information about the location or ownership of a biting animal with the intent to prevent quarantine by the local health officer. Here the People conceded in the trial court that the facts alleged in Quackenbush's brief and the People's response to Quackenbush's motion to suppress were essentially correct. Nowhere in those facts is there a hint of any evidence that would support a conviction under former section 1923. Nor did the People suggest to the trial court that there might be additional evidence to support a conviction. Under the circumstances, the trial court did not abuse its discretion.

The judgment is affirmed.

Stone (S. J.), P. J., concurred.

**YEGAN, J.**—I respectfully dissent. The majority affirm the superior court's grant of a petition for habeas corpus. In my opinion, the superior court should not have even reached the merits of the petition. Instead, it should have summarily denied it on the ground that Daniel A. Quackenbush had an adequate remedy at law.

Quackenbush was charged in the municipal court with two misdemeanors. He brought a motion to suppress evidence on Fourth Amendment grounds. When it was denied, his pretrial remedy was to "appeal" to the appellate department of the superior court. The penultimate sentence of Penal Code section 1538.5, subdivision (j) expressly authorizes such an appeal. The People's concession that a petition for writ of habeas corpus is appropriate is erroneous and not binding on this court. Their earlier objection in the superior court was correct and should have been sustained.

Generally speaking, Fourth Amendment violations are not cognizable on habeas corpus. In *In re Sterling* (1965) 63 Cal.2d 486 [47 Cal.Rptr. 205, 407 P.2d 5], Chief Justice Traynor eloquently explained why a criminal defendant is required to exhaust his direct remedies: the use of illegally obtained evidence has no bearing on the issue of guilt or innocence and there is no risk of convicting an innocent person by its use. (*Id.* at p. 487; see also *In re Clark* (1993) 5 Cal.4th 750, 767 [21 Cal.Rptr.2d 509, 855 P.2d 729].)

Here the use of a pretrial habeas corpus remedy violates these rules and may serve as a precedent for other defendants to bypass not only the trial and

appeal, but the pretrial appeal expressly given to misdemeanor defendants by the Legislature. A writ of habeas corpus is not a substitute for appeal. (*In re Harris* (1993) 5 Cal.4th 813, 826-827 [21 Cal.Rptr.2d 373, 855 P.2d 391]; *Adoption of Alexander S.* (1988) 44 Cal.3d. 857, 865 [245 Cal.Rptr. 1, 750 P.2d 778].)

As to the merits, it is sufficient to observe that the municipal court's denial of the motion to suppress carries the implied finding that there were exigent circumstances to excuse the obtaining of an inspection warrant. (E.g., *People* v. *Leyba* (1981) 29 Cal.3d 591, 596-597 [174 Cal.Rptr. 867, 629 P.2d 961].) The judiciary should not lightly second-guess animal control authorities. We so indicated in *Phillips* v. *San Luis Obispo County Dept. etc. Regulation* (1986) 183 Cal.App.3d 372, 379 [228 Cal.Rptr. 101]: "It is obvious that summary seizure of dogs must be permitted when of immediate danger to the public, as for example when the dog is vicious or rabid." Had the dog run away from the Quackenbush residence, bitten other children, and infected them with rabies, it would be difficult to explain why Quackenbush's Fourth Amendment rights took precedence over public health and safety. A dog with rabies does not wait for a dispassionate magistrate to issue a search warrant.

Finally, as to the charged Health and Safety Code former section 1923 violation, the majority come to the bold conclusion that the People may not proceed with the prosecution. Whether Quackenbush violated the statute is a fact-driven issue. Preclusion of the People's right to go forward with trial impinges on the separation of powers doctrine. (Cal. Const., art. III, § 3.) The place to put on evidence is at trial. There should be one here.

A petition for a rehearing was denied February 13, 1996, and the opinion was modified to read as printed above.