THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. CHARLES THORNTON, Defendant-Appellant.

Second District    No. 2—96—0143

Opinion filed February 26, 1997.

626

Jeffrey S. McCutchan, of Strom, Repay & McCutchan, of Elgin, for appellant.

Michael J. Waller, State's Attorney, of Waukegan (William L. Browers

and Marshall M. Stevens, both of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE DOYLE delivered the opinion of the court:

Defendant, Charles Thornton, was convicted of cruelty to an animal in violation of section 3.01 of the Humane Care For Animals Act (Act) (510 ILCS 70/3.01 (West 1994)). The trial court imposed a sentence that included, *inter alia*: 10 days of incarceration; 2 years of probation; 200 hours of community service; and restitution totalling $3,571.83.

Defendant filed a timely appeal. On appeal, defendant contends that the trial court erred when it (1) denied his motion to suppress evidence that was seized in a warrantless search of his residence; (2) required him to pay restitution; and (3) imposed an excessive sentence on him.

We will first address defendant's contention that the trial court erred when it denied his motion to suppress evidence. At a hearing on the motion, Sergeant Ryland Woodruff testified as follows. On May 29, 1995, Woodruff was on duty as a police officer for the Grayslake police department. At approximately 9 a.m. on that day, Woodruff responded to a report that a dog had been barking for several days inside an apartment in an apartment complex in Grayslake.

Woodruff went to the apartment complex and met with Debbie Nissen, the manager of the apartment complex. Nissen told Woodruff that tenants had complained to her about a dog that had been barking and yelping for two or three days inside apartment 104 in the complex. In response to these complaints, Nissen had unsuccessfully tried to contact defendant, the tenant of apartment 104, by knocking on the door of defendant's apartment, by calling defendant's apartment phone number, and by calling defendant's place of employment. Nissen also attempted to look inside defendant's apartment, but could not see inside the apartment because the blinds were closed.

Woodruff further testified that Nissen told him that she then used a key to enter defendant's apartment. Upon entering defendant's apartment, Nissen found a brown-colored dog in a small cage in a secondary bedroom. The cage was so small that the dog could not stand inside the cage. The bottom of the cage was covered with urine and feces. There was no sign of food or water in the cage. The dog was very thin and had blood on its paws. The dog was shaking and continuously made a whimpering and yelping sound.

Woodruff also spoke with a tenant who lived in the apartment above defendant's apartment. This tenant told Woodruff that the dog had been making the yelping sound continuously, "all day and all night," for two or three days.

Based on this information, Woodruff and another police officer decided that it was necessary to enter immediately defendant's apartment to "check on the well being of the dog." As the police officers came within six or seven feet of the entrance to defendant's apartment, they detected a strong odor of feces and urine. Upon entering the apartment, the police officers discovered a dog in a cage in conditions matching the conditions that Nissen had described.

The trial court based its denial of defendant's motion to suppress the evidence found in his apartment on the ground that the police were justified in entering defendant's apartment without a warrant because of an emergency related to the condition of the dog. On appeal, defendant contends that there are two reasons why the trial court's ruling was erroneous: (1) section 10 of the Act specifically prohibits the entry into a residence without a warrant; and (2) no emergency justified the warrantless entry.

■ We first consider defendant's statutory argument. Section 10 of the Act provides, in pertinent part:

"Upon receiving a complaint of a suspected violation of this Act, a Department investigator, any law enforcement official, or an approved humane investigator may, for the purpose of investigating the allegations of the complaint, enter during normal business hours upon any premises where the animal or animals described in the complaint are housed or kept, provided such entry shall not be made into any building which is a person's residence, except by search warrant or court order." 510 ILCS 70/10 (West 1994).

Defendant contends that the plain words of section 10 prohibit the warrantless entry of a residence by police to investigate a complaint regarding cruelty to an animal. Defendant argues that section 10 does not enumerate any exceptions to the warrant requirement for the search of a residence and that therefore there are no exceptions to the warrant requirement. Defendant asserts that the police violated the prohibition against warrantless entry when they entered his apartment without a warrant to investigate a complaint of cruelty to an animal.

The State responds that defendant has misread section 10. The State contends that the obvious intent of the legislature in enacting section 10 was to broaden the protection for animals subjected to cruelty. The State argues that the legislature sought to do this by granting an extraordinary exception in section 10 to the general warrant requirement for searches of nonresidential premises. In the State's view, the language in section 10 specifying that a warrant is required to search a residence merely indicates that the extraordinary exception does not apply to searches of residences, but does not mean that there are no exceptions to the warrant requirement.

■ The primary objective in construing the meaning of a disputed statute is to ascertain and give effect to the intent of the legislature. *People v. Robinson*, 172 Ill. 2d 452, 457 (1996). The most reliable indicator of legislative intent is the language of the statute itself. *People v. Tucker*, 167 Ill. 2d 431, 435 (1995). In construing the statute, a court should consider every part of the statute together. *People v. Warren*, 173 Ill. 2d 348, 357 (1996). Because the construction of the statute is a question of law, our review is *de novo*. *Robinson*, 172 Ill. 2d at 457.

■ With these principles in mind, and viewing the language of section 10 of the Act as a whole, we agree with the State's position. The language in section 10 (510 ILCS 70/10 (West 1994)) which states that "entry shall not be made into any building which is a person's residence, except by search warrant or court order," is plainly intended to make it clear that the extraordinary exception to the general warrant requirement for investigatory searches of nonresidential premises set out in section 10 does not extend to residential premises. There is nothing in section 10 which suggests that this language means that the few specifically established and well-delineated exceptions to the general warrant requirement for entry into residential premises (see *Katz v. United States*, 389 U.S. 347, 357, 19 L. Ed. 2d 576, 585, 88 S. Ct. 507, 514 (1967)) are not applicable under the Act.

A contrary construction of section 10 would prevent government agents from entering a residence without a warrant even when faced with exigent circumstances. Such a result would be absurd. We presume that in enacting section 10 the legislature did not intend to produce an absurd, inconvenient or unjust result. *Schirmer v. Bear*, 174 Ill. 2d 63, 73 (1996). For these reasons, we must reject defendant's proposed construction of section 10.

■ Next, we turn to defendant's contention that there was no emergency in this case that justified a warrantless entry of his residence by the police. The fourth amendment to the United States Constitution (U.S. Const., amend. IV) prohibits all unreasonable searches and seizures. A warrantless search of a home is presumptively an unreasonable search in violation of the fourth amendment. *Payton v. New York*, 445 U.S. 573, 586, 63 L. Ed. 2d 639, 651, 100 S. Ct. 1371, 1381 (1980).

However, the supreme court has recognized an "emergency exception" to the warrant requirement. The emergency exception allows police to enter and search residential premises without a warrant for the purpose of protecting and preserving life or property and to avoid serious injury. *Mincey v. Arizona*, 437 U.S. 385, 393-94, 57 L. Ed. 2d 290, 300-01, 98 S. Ct. 2408, 2413 (1978).

The basic elements of the emergency exception to the general warrant requirement are (1) the police must have reasonable grounds to believe that there is an emergency at hand and an immediate need for their assistance for the protection of life or property; (2) the search must not be primarily motivated by intent to arrest or seize evidence; and (3) there must be some reasonable basis, approximating probable cause, to associate the emergency with the area or place to be searched. *People v. Bondi*, 130 Ill. App. 3d 536, 539 (1984).

Our research has not revealed any Illinois case in which a court has applied the emergency exception to a situation involving the mistreatment of animals. However, courts in other jurisdictions have applied the emergency exception to such situations. See *Suss v. American Society for Prevention of Cruelty to Animals*, 823 F. Supp. 181 (S.D.N.Y. 1993); *Tuck v. United States*, 477 A.2d 1115 (D.C. App. 1984); *State v. Bauer*, 127 Wis. 2d 401, 379 N.W.2d 895 (1985).

■ The guiding principle in fourth amendment search and seizure cases is reasonableness. *People v. Free*, 94 Ill. 2d 378, 395 (1983). In determining the reasonableness of the belief that an emergency exists, courts must take into account the totality of the circumstances known to the officers at the time of their entry. *People v. Paudel*, 244 Ill. App. 3d 931, 939 (1993). A reviewing court should not disturb a trial court's ruling on a motion to suppress unless the ruling is manifestly erroneous. *People v. Miller*, 173 Ill. 2d 167, 181 (1996).

■ In this case, the totality of the circumstances known to the officers at the time of their entry into defendant's apartment was sufficient for the officers to reasonably believe that an emergency was at hand which required their immediate assistance. The tenant in the apartment above defendant's apartment told the officers that a dog had been yelping in defendant's apartment continuously for two or three days. Efforts by Nissen, the manager of the apartment complex, to contact defendant were unsuccessful. Thus the officers knew that the yelping had persisted for several days, but did not know when, or if, defendant might return to his apartment to tend to the distressed animal.

Nissen had previously entered defendant's apartment and observed the yelping dog. Nissen told the officers that the dog was in a filthy cage, which was so small that the dog could not stand. Nissen told the officers that the dog was very thin and that there was no sign of food or water available. Nissen told the officers that the dog was bleeding and was shaking. Based on this information, the officers could have reasonably believed that the dog was not merely "uncomfortable," but was in need of immediate assistance to avoid serious injury or, possibly, death.

Defendant argues that, because there was no evidence of a change in the dog's yelping, the officers did not have a reasonable basis to conclude that the dog's condition was dire. This argument is unpersuasive. The dog's constant yelping over such an extended period of time could also have been taken as an indication of the intensity of the dog's suffering. The officers could have reasonably believed that the dog had been confined in a tiny, filthy cage without food or water for up to three days. Moreover, the officers could have reasonably believed that the dog was injured and was bleeding. This was sufficient for the officers to conclude that an emergency was at hand that required their immediate assistance.

Defendant's argument that the officers should have gone to the county courthouse, which was only 15 or 20 minutes away, for a search warrant before entering his apartment does not require a different result. The amount of time it might have taken the officers to obtain a search warrant is unclear, and the officers had a reasonable belief that they had to act at once to aid the dog.

Defendant also argues that the officers' actions in taking pictures of the dog upon their entry into defendant's apartment belie the State's position that the officers were motivated to assist the dog. Our review of the record indicates that any pause by the officers to take pictures of the dog was apparently quite brief and does not show that the officers were primarily motivated by an intent to seize evidence. Rather, the record shows that the officers were primarily motivated by their reasonable belief that the dog was in need of immediate assistance to protect its life or prevent it from being seriously injured.

For these reasons, we conclude that the trial court's denial of defendant's motion to suppress was not manifestly erroneous.

Defendant next contends that the trial court erred when it ordered him to pay restitution. Alternatively, defendant contends that the trial court erred in determining the amount of restitution that he was required to pay.

The trial court ordered defendant to pay $3,571.83 in restitution to the Lake County Health Department Animal Control Division (Department). The amount of the restitution ordered by the court was based on a fee statement prepared by the Department. The fee statement indicated that $2,772 of the restitution amount was for 231 days of boarding the dog by the Department at a rate of $12 per day. Most of the balance of the restitution ordered was for various veterinary costs.

■ Defendant posits that the trial court "presumably" entered the restitution order pursuant to section 5—5—6 of the Unified Code of Corrections (Code) (730 ILCS 5/5—5—6 (West 1994)). Defendant

acknowledges that section 5—5—6 authorizes a trial court to require a criminal defendant to make restitution for "out-of-pocket expenses, damages, losses, or injuries found to have been proximately caused by the conduct of the defendant" (730 ILCS 5/5—5—6(a) (West 1994)) and suffered by the victim or victims of a defendant's conduct (730 ILCS 5/5—5—6(b) (West 1994)). However, defendant asserts that the term "victim," as used by the Code, does not encompass the Department. Based on his position that the Department is not an appropriate "victim" under section 5—5—6, defendant argues that the trial court erred when it ordered him to pay restitution to the Department.

The State responds by first disagreeing with defendant's presumption that the trial court ordered restitution pursuant to section 5—5—6 of the Code. The State contends that the trial court could have required defendant to pay restitution under section 12 of the Act (510 ILCS 70/12 (West 1994)), which creates a lien on an impounded animal for the expenses of the impoundment. Alternatively, the State contends that the trial court could also have properly ordered restitution under section 5—5—6 of the Code. Finally, the State suggests that defendant waived the issue of the propriety of restitution because he did not raise the issue at trial.

■ We will first address the question of waiver. The State contends that defendant acquiesced in the imposition of restitution by arguing at trial only that the amount of the restitution was excessive but not arguing that restitution was an unauthorized disposition. The State argues that defendant may not raise the issue of the trial court's authority to impose restitution for the first time on appeal.

Since defendant's argument addresses the authority of the trial court to order the restitution, we disagree. See *In re V.L.F.*, 174 Ill. App. 3d 930, 933 (1988). Also, because defendant argues that the trial court exceeded its authority under the restitution statute by awarding restitution to a person who is not considered a victim under the statute, the order may be considered void and attacked at any time. *In re D.R.*, 219 Ill. App. 3d 13, 16 (1991).

■ With respect to the merits of the restitution issue, the State first contends that under section 12 of the Act (510 ILCS 70/12 (West 1994)) defendant was personally liable for the costs of the care the Department provided for his dog. Section 12 of the Act sets out procedures for notifying a violator of the Act that an animal has been impounded and for a hearing when the violator appeals the impoundment. Section 12 then provides, in relevant part, as follows:

"Any expense incurred in such impoundment becomes a lien on

the animal impounded and must be discharged before the animal is released from the facility. When the animal is not claimed by its owner and all impoundment costs satisfied within 7 days, it may be sold at public or private sale for fair consideration to a person capable of providing care consistent with this Act, with the proceeds of that sale applied first to discharge the lien and any balance to be paid over to the owner. If no purchaser is found, the animal may be offered for adoption or disposed of in a manner not inconsistent with this or any other Act." 510 ILCS 70/12(b)(6) (West 1994).

The State contends that this language in section 12 made defendant personally liable for the costs of the care that his wrongdoing precipitated. In the State's view, a lien arose under section 12 when the Department impounded defendant's dog. The State asserts that the cost of the impoundment and other necessary expenses related to the impoundment were therefore a debt that the trial court had the power to collect by ordering defendant to pay restitution.

We disagree with the State's construction of section 12. The State contends that section 12 shows a legislative intent to make a violator of the Act personally liable for the costs of the care that his wrongdoing precipitated because section 12 allows a lien on an animal that is impounded. We initially note that there were no formal impoundment proceedings here as contemplated in section 12. Even assuming there had been, the State does not explain how the existence of a civil debt to the county would, in itself, automatically empower a court to order summarily the debtor to make payment of the debt as restitution in a criminal prosecution. Moreover, section 12, by itself, does not provide authority for a court to order restitution from the violator to pay the costs of the care. Rather, the plain language of section 12 sets out only one source for the payment of the costs of impoundment, *i.e.*, the proceeds, if any, from the sale of the animal. 510 ILCS 70/12(b)(6) (West 1994).

For these reasons, we reject the State's argument that section 12 provided authority for the trial court to order defendant to pay restitution for the costs related to the impoundment of his dog.

■ We turn now to the State's contention that section 5—5—6 of the Code authorized the trial court to order defendant to pay restitution for these costs. Section 5—5—6 of the Code provides, in relevant part, as follows:

"In fixing the amount of restitution to be paid in cash, *** the court shall assess the actual out-of-pocket expenses, losses, damages, and injuries suffered by the victim named in the charge and any other victims who may also have suffered out-of-pocket expen-

ses, losses, damages, and injuries proximately caused by the same criminal conduct of the defendant ***." 730 ILCS 5/5—5—6(b) (West 1994).

Defendant correctly notes that the Code provides a definition of the term "victim." 730 ILCS 5/3—1—2(n) (West 1994) (cross-referencing 725 ILCS 120/3(a) (West 1994)). The designated definition specifies five types of "persons" who may be considered a victim. These are (1) a person physically injured as a result of a violent crime; (2) a person who suffers injury to or loss of property as a result of a violent crime; (3) a close relative of a person against whom a violent crime is perpetrated; (4) any person against whom a violent crime has been committed; and (5) any person who has suffered personal injury as a result of a violation of certain statutory provisions. 725 ILCS 120/3(a) (West 1994).

Defendant argues that the Code's definition of victim does not include the Department. In support of this position, defendant cites *People v. McGrath*, 182 Ill. App. 3d 389 (1989), and cases cited therein which hold that law enforcement agencies are not entitled to restitution for costs related to investigating and prosecuting crimes because these agencies are funded to provide such services. Defendant reasons that the Department should not be construed as a victim because the Department was simply providing services to board and house the dog, which are within the Department's normal course of operations.

Defendant acknowledges that the dog could be considered a "victim" under section 5—5—6 if it were a person. However, defendant argues that an animal is not a "person" to whom, or on whose behalf, restitution can be paid because an animal is considered property under the statute.

The State counters that defendant is incorrect in his position that the definition of victim under section 5—5—6 is limited to the definition designated in the Act. The State cites *People v. Lowe*, 153 Ill. 2d 195 (1992), where our supreme court stated that "within the context of section 5—5—6, the term 'victim' has a broader meaning than that given it in the [Code]." *Lowe*, 153 Ill. 2d at 201. The *Lowe* court then held that the meaning of "victim" in section 5—5—6 is not restricted to those who are injured by violent crimes, but also includes victims of nonviolent crimes. *Lowe*, 153 Ill. 2d at 207. The State also points to section 3—1—1 of the Code, which provides that "[f]or the purposes of this Chapter, the words and phrases described in this Article have the meanings designated in this Article, except when a particular context clearly requires a different meaning." 730 ILCS 5/3—1—1 (West 1994).

Urging a broader and/or contextually required definition of

"victim," the State argues that either the dog or the Department can be properly characterized as a victim under section 5—5—6. The State reasons that animals are owed a duty of care substantially like that owed to humans and that the Department was obliged to render services to the dog substantially like those that would be required by a human in the same circumstances.

■ We cannot agree with the State's position. The definition of "victim" provided in the Code plainly specifies that a victim must be a "person." 725 ILCS 120/3(a) (West 1994). The State has not cited any case where an animal was considered a victim in the context of a restitution statute.

In view of the plain language in the statutory definition specifying that a victim must be a person, and in view of the lack of authority for broadening the definition to include an animal in the definition of "person," we conclude that the definition of "victim" in section 5—5—6 does not include an animal. Thus, the dog in this case was not a victim under section 5—5—6.

Nor can we conclude that the Department was a victim under section 5—5—6. We are aware that the appellate court has held that a trial court may, in certain circumstances, order restitution to an agency that has provided services to a victim. See, *e.g.*, *People v. Strebin*, 209 Ill. App. 3d 1078 (1991) (restitution proper to agency that provided counseling services to victim). However, we are not aware of any Illinois case ordering restitution to an agency where there has not been an underlying victim or where the "victim" was an animal.

Section 5—5—6 allows a trial court to order restitution to a victim, or, in certain circumstances, an agency that has provided services to a victim. But, under section 5—5—6, it is essential that there be a victim.

In this case, no victim that meets the statutory definition of that term, or any previously broadened definition of that term, has been identified. Consequently, to the extent that it relied on section 5—5—6, the trial court erred when it ordered defendant to pay restitution.

Because the State has not cited any authority that supports the restitution order, the order must be vacated. Consequently, we need not address defendant's contention that the amount of the restitution ordered was excessive. Parenthetically, we note that in similar future cases the State will not be without the option of seeking the imposition of an appropriate fine as a financial penalty against convicted offenders.

■ Defendant next contends that the trial court abused its discretion by imposing an excessive sentence. The trial court imposed a

sentence that included 10 days of incarceration (stayed pending a subsequent determination of compliance); 2 years of probation; 200 hours of community service; and restitution of $3,571.83. In addition, the sentencing order required defendant, *inter alia*, to undergo a mental health evaluation; obtain a GED; have no contact with animals; refrain from consuming alcohol or drugs while on probation; and submit to random urine and breath analysis. The trial court also ordered that the dog be placed for adoption.

Defendant contends that this punishment was disproportionate to the severity and nature of the offense of cruelty to an animal. In support of his contention, defendant compares the sentence imposed on him with the sentence imposed on a defendant in a totally unrelated case involving the offense of cruelty to an animal.

Defendant cites no authority in support of his proposition that the propriety of a sentence may be determined by comparing the sentence with a sentence or sentences imposed in unrelated cases. Supreme Court Rule 341(e)(7) (155 Ill. 2d R. 341(e)(7)) requires an appellant to cite authority in support of his legal arguments on appeal. Because defendant has not cited any authority in support of his argument, the argument is waived and we need not address it. *Chicago Title & Trust Co. v. Weiss*, 238 Ill. App. 3d 921, 927 (1992).

Even if defendant had not waived this issue, defendant's arguments are unavailing. This court recognizes the principle that fundamental fairness and respect for the law require that defendants similarly situated not receive grossly disparate sentences. *People v. Brown*, 103 Ill. App. 3d 306, 309 (1982). However, that principle applies to the unfairness of imposing grossly disparate sentences on codefendants for the commission of the same offense. *Brown*, 103 Ill. App. 3d at 309. The principle does not apply to the commission of similar or identical offenses in separate cases involving the same defendant (*Brown*, 103 Ill. App. 3d at 309) or defendants who are not codefendants (*People v. Terneus*, 239 Ill. App. 3d 669, 674-78 (1992)). Consequently, defendant's argument that his sentence is excessive because it was disproportionately harsh when compared to the sentence imposed in an unrelated case is without merit.

Finally, we address the question of whether, without referring to other cases, defendant's sentence was excessive. Because a trial court is in a superior position to assess the credibility of the witnesses and to weigh the evidence presented at the sentencing hearing, a trial court has broad discretionary powers in choosing the appropriate sentence a defendant should receive. *People v. Jones*, 168 Ill. 2d 367, 373 (1995). Therefore, when a reviewing court examines the propriety of a sentence imposed by a trial court, the reviewing court should

proceed with great care and caution. *People v. Streit*, 142 Ill. 2d 13, 19 (1991). A reviewing court may not alter a sentence imposed by a trial court without a showing that the punishment imposed constituted an abuse of discretion. *People v. Illgen*, 145 Ill. 2d 353, 379 (1991).

After a careful review of the record in this case, we conclude that the trial court did not impose an excessive sentence on defendant. A first offense for cruelty to an animal is a Class C misdemeanor. 510 ILCS 70/16(c)(6) (West 1994). The offense is therefore punishable by a sentence of incarceration of not more than 30 days. 730 ILCS 5/5—8—3(a)(3) (West 1994). Thus, the 10-day sentence of incarceration imposed on defendant in this case is substantially less than the maximum sentence that the trial court could have imposed. Moreover, we note that, under the terms of the sentence, defendant could avoid incarceration entirely by complying with the other terms of the sentence.

As determined above, the restitution part of the sentence was improper and must be vacated. As to the probation and community service parts of the sentence, the record shows that the trial court imposed these terms and conditions after carefully considering the appropriate factors in aggravation and mitigation presented at the sentencing hearing. After reviewing the record, we cannot say that the trial court abused its discretion in imposing these terms and conditions.

Based on the foregoing, the judgment of the trial court of Lake County is affirmed. The sentence is affirmed except for the order requiring restitution, which is vacated.

Affirmed in part and vacated in part.

McLAREN and HUTCHINSON, JJ., concur.