[No. B212210. Second Dist., Div. Three. June 3, 2010.]

THE PEOPLE, Plaintiff and Respondent, v.
KEITH CHUNG, Defendant and Appellant.

**COUNSEL**

William L. Heyman, under appointment by the Court of Appeal, for Defendant and Appellant.

Edmund G. Brown, Jr., Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Pamela C. Hamanaka, Assistant Attorney General, Jaime L. Fuster and Tannaz Kouhpainezhad, Deputy Attorneys General, for Plaintiff and Respondent.

**OPINION**

**KLEIN, P. J.**—Keith Chung was charged by information with two counts of cruelty to an animal and possession of a controlled substance. (Pen. Code,

§ 597, subd. (a); Health & Saf. Code, § 11350, subd. (a).)[1] Prior to trial, Chung moved to suppress evidence seized during a search of his residence on the theory the police lacked exigent circumstances justifying warrantless entry.

The trial court conducted a hearing on the motion. Chung's neighbor, Jennifer Lee, testified she called the police in the early morning hours of July 13, 2007, and reported hearing the high-pitched crying of a dog in pain in the unit above hers. Lee told the officers who responded to her call that she had heard similar sounds in the past, but this time it sounded more serious. The officers went to Chung's door but he said he did not own any dogs. While the officers spoke to Chung, one of them heard the faint sound of a dog whimpering inside Chung's condominium. Believing there was an animal in distress, the officers entered without a warrant after Chung refused the officers permission to enter.

The officers found an injured dog on the patio and a dead dog in the freezer section of the refrigerator. The dog in the refrigerator was frozen solid. It died of blunt force trauma that caused fracturing of the liver and tears in the lung tissue which led to bleeding inside the chest and abdominal cavity. The live dog on the patio had suffered extensive head trauma and was euthanized by a veterinarian later that morning.

The trial court denied the motion to suppress, finding it was reasonable under the circumstances for the officers to enter the condominium without first obtaining a warrant in order to aid a live animal the officers reasonably believed was in distress.

Chung thereafter pled no contest to one count of violating section 597, subdivision (a) and the remaining counts were dismissed. The trial court sentenced Chung to 16 months in state prison.

On appeal, Chung contends the trial court erroneously denied his motion to suppress evidence.[2] We conclude exigent circumstances permitted warrantless entry of Chung's residence to aid a live animal police officers reasonably

---

[1] Penal Code section 597, subdivision (a) states: "Except as provided in subdivision (c) of this section or Section 599c, every person who maliciously and intentionally maims, mutilates, tortures, or wounds a living animal, or maliciously and intentionally kills an animal, is guilty of an offense punishable by imprisonment in the state prison, or by a fine of not more than twenty thousand dollars ($20,000), or by both the fine and imprisonment, or, alternatively, by imprisonment in a county jail for not more than one year, or by a fine of not more than twenty thousand dollars ($20,000), or by both the fine and imprisonment."

Subsequent unspecified statutory references are to the Penal Code.

[2] Although an appeal of a judgment of conviction predicated on a plea of no contest is generally barred without a certificate of probable cause (§ 1237.5), that is not true when the

believed was being abused in violation of section 597, subdivision (a). We therefore affirm the judgment.

## FACTUAL AND PROCEDURAL BACKGROUND

1. *Evidence received at the hearing on the motion to suppress.*

a. *Testimony of the citizen informant.*

Jennifer Lee testified she lives in a Marina Del Rey condominium directly below Chung's unit. On July 13, 2007, Lee and her husband were awakened at 2:00 or 3:00 a.m. by loud banging and the sound of a crying dog emanating from Chung's condominium. Lee heard "yelping, howling. It wasn't barking." The sound was "high pitched" and the animal seemed to be in pain. The sound progressively grew louder and continued for approximately 15 minutes. Lee had heard similar noises from Chung's condominium at least several times a week. On this occasion "it just sounded really bad."

Lee called 911 and two uniformed officers arrived. Lee recalled she told the officers she "heard an animal crying." Lee told the officers she "felt an animal was in danger" and probably stated she believed the animal was "being tortured." Lee testified she told the officers, "I heard loud noises [and] the dog seem[ed] to be in pain." Lee also probably told the officers she had heard similar noises in the past and had called animal control.[3]

b. *Testimony of one of the police officers who made the warrantless entry.*

Los Angeles Police Officer Peter Correa testified he and his partner received a report of animal cruelty and went to a condominium complex. Lee admitted the officers into the lobby of the building and told the officers she could hear loud stomping, yelling and the cries of a dog from the condominium above hers. She had previously heard similar sounds and called the police on this occasion "because it was especially loud."

Correa and his partner went to Chung's unit. Correa knocked on the door and announced himself as a police officer. Chung came to the door, "cracked the door open and poked his head out . . . ." When Correa advised Chung of the reason for his presence, Chung responded he did not own any dogs.

---

defendant seeks review of the denial of a suppression motion. (See § 1538.5, subd. (m); Cal. Rules of Court, rule 8.304(b)(4)(A).)

[3] Lee had called the police two or three times prior to this incident to complain about animal noise from Chung's condominium. However, on those occasions, Lee called a nonemergency line and was told to call animal control.

Correa then engaged Chung in a conversation and asked Chung to step outside the condominium. Chung complied but left the front door open about an inch. While the officers continued to speak to Chung, Correa heard what he thought was the faint sound of a dog whimpering inside the condominium. Correa asked Chung for permission to enter the condominium. Chung denied the request, saying it was too messy inside.

Correa and his partner detained Chung in the hallway and handcuffed him. Correa's partner telephoned the watch commander to determine whether they had probable cause to enter the home. Correa testified he wanted to enter the condominium to check the safety of any animals within. Correa entered the condominium and saw it was in disarray. He immediately observed a glass pipe on the kitchen counter which appeared to contain the residue of some sort of illegal drug.

Correa began looking for any sign of a dog. In one of the bathrooms, Correa saw what appeared to be dog hair and blood on the floor and walls. There were also a couple of knives in the bathroom. Correa encountered a small dog lying on a towel on the patio in a plastic toolbox. It appeared to be injured and weak. It was not responsive but was still breathing.

When defense counsel asked whether Correa could have telephoned for a warrant, Correa responded: "No. Exigent circumstances, we were in there trying to make sure that everything was safe." "[W]e were looking for dogs that could be in danger."

### 2. The trial court's findings of fact and ruling.

The trial court indicated its tentative ruling was to uphold the search because Correa knew, based on information received from "a seemingly credible citizen," that it sounded like a dog was yelping and in distress. Further, when the officers questioned Chung about dogs, Chung denied owning any dogs. When the officer thereafter heard the whimpering of a dog, Chung's credibility immediately was cast into doubt. The trial court found it was reasonable for the officers to enter without first obtaining a warrant because the exigent circumstances exception ought to apply to a live animal in distress. The trial court also noted the exception applied to property and a dog is considered property.

After counsel argued, the trial court reiterated its tentative ruling. The trial court again noted the sound of a dog whimpering from inside Chung's condominium gave the officers reason to disbelieve Chung's claim he did not own a dog and good reason to think there was a dog inside the condominium that "was not merely uncomfortable, but was in need of immediate assistance to avoid injury or death."

The trial court found it would be "unreasonable to expect that any human being in those circumstances would delay for hours in order to get a warrant, knowing that the animal might be in serious distress, serious injury, or dying . . . . [¶] So I think the entry was reasonable . . . ."

## CONTENTIONS

Chung contends the exigent circumstances exception to the warrant requirement of the Fourth Amendment does not extend to the protection of an animal. He further contends that, even if it does, there was insufficient evidence of exigent circumstances here.

The People argue exigent circumstances justified the warrantless entry and search in the enforcement of section 597, subdivision (a).

## DISCUSSION

1. *Appellate review of a motion to suppress evidence.*

" 'When reviewing a ruling on an unsuccessful motion to exclude evidence, we defer to the trial court's factual findings, upholding them if they are supported by substantial evidence, but we then independently review the court's determination that the search did not violate the Fourth Amendment.' [Citation.]" (*People v. Panah* (2005) 35 Cal.4th 395, 465 [25 Cal.Rptr.3d 672, 107 P.3d 790].) We review the reasonableness of searches and seizures undertaken by the police under federal constitutional standards. (*People v. Rogers* (2009) 46 Cal.4th 1136, 1156, fn. 8 [95 Cal.Rptr.3d 652, 209 P.3d 977].)

2. *The exigent circumstances exception to the warrant requirement.*

Under the Fourth Amendment to the federal Constitution, warrantless entry into a residence by a police officer is *"per se"* unreasonable, unless the police can show that it falls within one of a carefully defined set of exceptions based on the presence of 'exigent circumstances.' " (*Coolidge v. New Hampshire* (1971) 403 U.S. 443, 474–475 [29 L.Ed.2d 564, 91 S.Ct. 2022].) Such exceptions are " 'few in number and carefully delineated,' [citation] and . . . the police bear a heavy burden when attempting to demonstrate an urgent need that might justify warrantless searches or arrests." (*Welsh v. Wisconsin* (1984) 466 U.S. 740, 749–750 [80 L.Ed.2d 732, 104 S.Ct. 2091].)

The exigent circumstances exception to the Fourth Amendment has been defined to "include 'an emergency situation requiring swift action to

prevent imminent danger to life or serious damage to property . . . .' [Citation.] The action must be 'prompted by the motive of preserving life or property and [must] reasonably appear[] to the actor to be necessary for that purpose.' [Citation.]" (*People v. Duncan* (1986) 42 Cal.3d 91, 97 [227 Cal.Rptr. 654, 720 P.2d 2].) " ' "There is no ready litmus test for determining whether such circumstances exist, and in each case the claim of an extraordinary situation must be measured by the facts known to the officers." ' [Citation.]" (*People v. Wharton* (1991) 53 Cal.3d 522, 577 [280 Cal.Rptr. 631, 809 P.2d 290].) "An action is 'reasonable' under the Fourth Amendment, regardless of the individual officer's state of mind, 'as long as the circumstances, viewed *objectively,* justify [the] action.' [Citation.] The officer's subjective motivation is irrelevant." (*Brigham City v. Stuart* (2006) 547 U.S. 398, 404 [164 L.Ed.2d 650, 126 S.Ct. 1943].) The touchstone of all Fourth Amendment determinations is reasonableness. (*United States v. Knights* (2001) 534 U.S. 112, 118 [151 L.Ed.2d 497, 122 S.Ct. 587].)

> 3. *The circumstances presented justified warrantless entry to prevent imminent animal cruelty.*

> a. *Historical overview.*

By way of background, the protection of animals has long been recognized as an appropriate governmental concern. In *United States v. Stevens* (2010) 559 U.S. \_\_\_ [176 L.Ed.2d 435, 130 S.Ct. 1577], the United States Supreme Court recently noted "the prohibition of animal cruelty itself has a long history in American law, starting with the early settlement of the Colonies. Reply Brief 12, n. 8; see, *e.g.,* The Body of Liberties § 92 (Mass. Bay Colony 1641), reprinted in American Historical Documents 1000–1904, 43 Harvard Classics 66, 79 (C. Eliot ed. 1910) ('No man shall exercise any Tirranny or Crueltie towards any bruite Creature which are usuallie kept for man's use')." (*Id.* at p. \_\_\_ [130 S.Ct. at p. 1585].)

The specific statute Chung violated, section 597, dates back to 1872. As enacted in 1872, former section 597 read: "Every person who maliciously kills, maims, or wounds an animal, the property of another, or who maliciously and cruelly beats, tortures, or injures any animal, whether belonging to himself or another, is guilty of a misdemeanor." (See Historical and Statutory Notes, 49 West's Ann. Pen. Code (1999 ed.) foll. § 597, p. 26.)

Thus, statutes prohibiting animal cruelty have long been part of the fabric of American life.[4]

---

[4] Further, "[s]ociety changes. . . . [¶] . . . Standards of decency have evolved . . . . They will never stop doing so." (*Graham v. Florida* (2010) 560 U.S. \_\_\_, \_\_\_ [176 L.Ed.2d 825, 130 S.Ct. 2011] (conc. opn. of Stevens, J.).) Dogs have become increasingly integrated into peoples'

### b. *The pertinent circumstances known to the investigating officers.*

Lee testified she was awakened in the middle of the night by the yelping and high-pitched howling of a dog in the condominium above hers. Although Lee had heard such noises previously, this time they sounded "really bad." Further, the sound became progressively worse and Lee feared the dog was in danger and perhaps was being tortured. Lee, whom the trial court found to be a reliable citizen informant, relayed this information to the police officers who responded to her call and directed the officers to Chung's condominium. When the officers went to Chung's door to investigate, Chung denied owning any dogs. Correa thereafter heard the faint sound of a dog whimpering inside the condominium.

The trial court found that when Correa heard the whimpering, Chung's "credibility went out the window . . . . And they had a good reason to think that there was a dog in distress. . . ." We defer to the trial court's factual findings because they are supported by substantial evidence. (*People v. Panah, supra,* 35 Cal.4th at p. 465.)

### c. *Chung's argument.*

Chung argues the exigent circumstances exception should be limited to preserving human life. Chung notes dogs are considered personal property and asserts it is inappropriate to justify warrantless entry into a residence to protect a dog's life. Chung notes the police entered his home in the middle of the night after he refused consent. He argues the officers should have been required to obtain a warrant before entering in order to protect a dog's life.

### d. *Pertinent California case law.*

In *Broden v. Marin Humane Society* (1999) 70 Cal.App.4th 1212 [70 Cal.Rptr.2d 1212, 83 Cal.Rptr.2d 235], officers conducted a warrantless entry into business premises, a pet shop, based on exigent circumstances. The officers entered the premises following reports of stench and flies at the store and found animals in distress. *Broden* concluded the exigent circumstances exception permits officers to make a warrantless entry when there are reasonable grounds to believe there are animals in need of immediate aid. *Broden* recognized: "There is no question that law enforcement officers may make a warrantless entry of a building when there are reasonable grounds for

---

lives. In addition to serving as companion animals, dogs function as service animals to assist people with disabilities, they work in animal-assisted therapy and in search and rescue, in law enforcement and in the military, helping to detect bombs and drugs, and much more. Changed circumstances make society even less tolerant of cruelty toward animals, particularly dogs.

believing that persons inside are in need of immediate aid. [Citation.] Section 597.1 clearly contemplates that animals shall receive a similar solicitude." (*Id.* at p. 1222.)[5]

Chung argues *Broden* is distinguishable in that it is a civil case arising out of administrative mandamus proceedings, and it involved a commercial establishment rather than a residence. Chung further argues section 597.1 is not at issue here and, in any event, it does not authorize a warrantless search of a private residence.

■ Chung's attempts to distinguish *Broden* are unpersuasive. Irrespective of any differences identified by Chung, *Broden* recognizes the exigent circumstances exception permits officers to make a warrantless entry when there are reasonable grounds to believe there are animals inside in need of immediate aid.

Unlike *Broden*, no exigency was present in *Conway v. Pasadena Humane Society* (1996) 45 Cal.App.4th 163 [52 Cal.Rptr.2d 777]. *Conway* held animal control officers could not lawfully enter a home, absent a warrant or consent, to seize and impound the homeowner's dog for violation of a leash law. *Conway* noted the underlying offense was minor and it was not shown that the animal control officers lacked the time needed to obtain a warrant. (*Id.* at p. 175.)

Likewise, there was no exigency in *In re Quackenbush* (1996) 41 Cal.App.4th 1301 [49 Cal.Rptr.2d 147]. *Quackenbush* involved the seizure of a dog that had bitten someone two days earlier. *Quackenbush* conceded exigent circumstances may justify warrantless seizure of a biting dog from a residence if necessary to determine whether the dog had rabies. However, no exigent circumstances were shown. (*Id.* at pp. 1306–1307.)

■ In the instant case, as in *Broden*, exigent circumstances existed. Correa had reasonable cause to believe there was a dog in distress inside Chung's condominium. Further, cruelty to an animal, which is punishable as an alternate felony/misdemeanor under section 597, is substantially more serious than the leash law violation at issue in *Conway*. Thus, it was reasonable, under the circumstances presented, for the officers to enter

---

[5] Section 597.1 provides: "(a) Every owner . . . of any animal who permits the animal to be in any building . . . without proper care and attention is guilty of a misdemeanor. Any peace officer, humane society officer, or animal control officer shall take possession of the stray or abandoned animal and shall provide care and treatment for the animal until the animal is deemed to be in suitable condition to be returned to the owner. When the officer has reasonable grounds to believe that very prompt action is required to protect the health or safety of the animal or the health or safety of others, the officer shall immediately seize the animal . . . ."

Chung's condominium without a warrant and despite Chung's refusal of consent, to check on the welfare of a live dog the officers reasonably believed to be in distress within.

### e. *Out-of-state authority is in accord.*

*People v. Thornton* (1997) 286 Ill.App.3d 624 [222 Ill.Dec. 60, 676 N.E.2d 1024] (*Thornton*), an Illinois case, is directly on point. There, a police officer responded to a report of a dog barking for several days inside an apartment. The apartment manager informed the officer she previously had entered the apartment using a key after being unable to contact the resident and found a thin dog shaking and continuously whimpering and yelping in a small cage. The tenant who lived above the apartment told the officer the dog had been yelping continuously for two or three days. The officer entered the apartment to check on the well-being of the dog and found it in conditions matching those described by the manager.

*Thornton* found the totality of the circumstances known to the officers at the time of the entry into the apartment was sufficient to permit the officers reasonably to believe that an emergency requiring their immediate assistance was at hand. *Thornton* concluded the officers reasonably could have believed the dog was not merely "uncomfortable," but was in need of immediate assistance to avoid serious injury or, possibly, death. (*Thornton, supra,* 676 N.E.2d at p. 1028.)

*Thornton* noted other jurisdictions also had applied the exigency exception to prevent harm to animals, citing *Suss v. American Society for Prevention of Cruelty to Animals* (S.D.N.Y. 1993) 823 F.Supp. 181 (cat trapped between walls of two buildings); *Tuck v. United States* (D.C. 1984) 477 A.2d 1115 (rabbits in unventilated display window of a pet store suffering from extreme heat), and *State v. Bauer* (1985) 127 Wis.2d 401 [379 N.W.2d 895] (distressed horses in barn). (*Thornton, supra,* 676 N.E.2d at p. 1028.)

*Thornton* is distinguishable, according to Chung, because the condition of the dog was known by prior direct observation by the manager. Also, the dog continuously had been yelping for two or three days and the resident of the apartment could not be reached. However, those circumstances do not dictate a different result in the instant case. The dog in *Thornton* was neglected; here, the information Correa received from Chung's neighbor indicated a dog actively was being abused. Lee told the officers she had heard similar sounds in the past but this time it sounded more serious. Lee recalled she also

probably told the officers she feared the dog was being tortured. Under these circumstances, warrantless entry was proper.

### f. Conclusion.

■ Exigent circumstances properly may be found when an officer reasonably believes immediate warrantless entry into a residence is required to aid a live animal in distress. Where an officer reasonably believes an animal on the property is in immediate need of aid due to injury or mistreatment, the exigent circumstances exception to the warrant requirement of the Fourth Amendment may be invoked to permit warrantless entry to aid the animal. On the record presented, the trial court properly denied Chung's suppression motion.[6]

### 4. Sufficiency of the evidence.

Chung next contends that, even if exigent circumstances apply to protect a dog, there was insufficient evidence a dog needed protection in this case. Lee reported hearing a dog yelp and howl for approximately 15 minutes, not for two or three days as in *Thornton*. Chung argues there are many innocent explanations for the noises described by Lee. Further, Lee was involved in litigation with Chung over water damage to her condominium and she had made complaints to the homeowners association about noise from Chung's apartment. Even if Correa heard a faint whimper outside Chung's door, which testimony Chung asserts was highly suspicious given the dog's condition, the whimpering could have been caused by a television or radio program. Chung avers there was insufficient evidence to permit a reasonable police officer to conclude that exigent circumstances justified entry. (See *People v. Ormonde* (2006) 143 Cal.App.4th 282, 291–292 [49 Cal.Rptr.3d 26].)

As previously noted, we accept the trial court's findings of fact where they are supported by substantial evidence. Here, unlike the neglected animal in *Thornton*, Lee reported her fear that Chung actively was abusing a dog. Thus, there was sufficient evidence to support the trial court's finding of exigent circumstances.

---

[6] Accordingly, we need not address Chung's further arguments that neither the protective sweep exception (*Maryland v. Buie* (1990) 494 U.S. 325, 333–334 [108 L.Ed.2d 276, 110 S.Ct. 1093]) nor the community caretaking exception (*People v. Parra* (1973) 30 Cal.App.3d 729, 732–733 [106 Cal.Rptr. 531]) applies in this case. Similarly, we need not address Chung's assertion the trial court incorrectly relied on that part of the exigent circumstances exception relating to protection of property.

## DISPOSITION

The judgment is affirmed.

Kitching, J., and Aldrich, J., concurred.